JOHNSON, Justice.*
_JjWe granted this writ application to determine whether La. R.S. 31:136 applies to the plaintiffs’ claims, thus requiring plaintiffs to provide defendants with pre-suit notice and an opportunity to perform prior to filing suit. For the following reasons, we affirm the court of appeal, and hold that La. R.S. 31:136 is inapplicable to the plaintiffs’ claims.
FACTS AND PROCEDURAL HISTORY
Plaintiffs, Kern Broussard and Nettie Ann Dubois Broussard, own certain real *815 property in Vermilion Parish, Louisiana, on which mineral, surface, and subsurface |2leases were granted to various corporate entities to conduct oil and gas operations. On March 31, 2004, Plaintiffs filed suit against numerous companies, including applicants ConocoPhillips Company (“Cono-co”) and Chevron U.S.A., Inc. (“Chevron”), alleging that the defendants negligently conducted their oil and gas operations, resulting in contamination of the property, and alleging that the property required restoration.[1]
Defendants filed numerous exceptions, including exceptions of improper venue, lack of subject matter jurisdiction, improper cumulation of actions, prematurity/want of amicable demand, and vagueness. At issue in the instant consolidated writ applications are the exceptions of prematurity/want of amicable demand filed by defendants Conoco and Chevron. These exceptions are based on Conoco’s and Chevron’s assertions that La. R.S. 31:136, also known as Mineral Code article 136,[2] mandates that the Plaintiffs provide defendants with written notice and a reasonable opportunity to perform, prior to filing suit, where there are allegations that a mineral lessee breached an obligation to operate the leased property as a reasonably prudent operator.
The exceptions were heard by the trial court on May 7, 2007. Several exceptions, including the exception of prematurity, were granted, and Plaintiffs were given additional time to cure the bases for granting the exceptions. Following Plaintiffs’ Fourth Supplemental and Amending Petition, defendants re-urged several |sexceptions, including the exceptions of prematurity/want of amicable demand. On October 3, 2007, the trial court found that the amended petition had not cured the defects underlying the exceptions and made the basis of the court’s ruling of May 7, 2007, and dismissed Plaintiffs’ action, without prejudice.
Plaintiffs appealed the trial court’s ruling, arguing that they were not required to make amicable demand prior to suit, and that their claims were ripe for review. The court of appeal affirmed the trial court’s ruling in part, but reversed the trial court’s dismissal of the action based on the failure to provide the written notice required by Article 136.[3] Conoco and Chevron (“Applicants”) filed the instant writ applications solely on the issue of whether plaintiffs were required to provide written notice pursuant to Mineral Code Article 136 prior to filing suit. This Court granted the writ applications.[4]
DISCUSSION
The issue in this case involves the interpretation of Mineral Code article *816 136. Thus, it is a question of law, and reviewed by this Court under a de novo standard of review. Thibodeaux v. Donnell, 2008-2436, p. 3 (La.5/5/09), 9 So.3d 120, 122-123; Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582 (La.11/29/06), 943 So.2d 1037. After our review, we “render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state.” Thibodeaux, 08-2436 at p. 3, 9 So.3d at 123 (citing Holly & Smith Architects, Inc., 943 So.2d at 1045).
In deciding whether Article 136 requires notice, or amicable demand, in this case, we first examine the concept of “putting in default,” and its history in the Civil |4Code and Mineral Code. “Putting in default” exists in the civilian system as a general requirement that an “obligor’s failure to perform must be turned into a default that entails legal consequences.” Litvinoff, 6 Louisiana Civil Law Treatise: The Law of Obligations, § 1.2 (1999). Thus, the concept generally provides that the obligor is held responsible for the damage his nonperformance may cause only from the time that he is put in default. Id. The Civil Code articles relative to Obligations specifically provide for the circumstances and methods of putting an obligor in default.
At the time the Mineral Code was enacted, the Civil Code made a distinction between “active” and “passive” breaches of a contract. La. C.C. art. 1931 (1870). Former Civil Code article 1931 generally defined an active violation as “doing something inconsistent with the obligation it has proposed” and a passive violation as “not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract.” Id. This distinction was relevant because it governed whether a putting in default was necessary. La. C.C. art.1932 (1870). At that time, the Civil Code provided that damages arising from an active breach were due from the moment of the breach, whereas damages for a passive breach were only due from the time that the debtor had been put in default. La. C.C. arts. 1932-1933 (1870).
The Louisiana Mineral Code, set forth in La. R.S. 31:1, et seq., was enacted in 1974, and went into effect on January 1, 1975 (Acts 1974, No. 50, § 1). Relative to the issues of “notice” and “putting in default” is Article 135, which provides that “[t]he provisions of the Louisiana Civil Code concerning putting in default are applicable to mineral leases subject to the following modifications.” La. R.S. 31:135.
One modification provided by the Mineral Code was set forth in Article 136, |sand related to claims for damages resulting from drainage. Article 136, as originally enacted in 1974, provided:
A putting in default is a prerequisite to a demand for damages arising from drainage of the property leased. If a lessee is found to have had actual or constructive knowledge of drainage and is held responsible for consequent damages, the damages may be computed from the time a reasonably prudent operator would have protected the leased premises from drainage. In other cases they may be computed only from the time of the putting in default.
This article was originally enacted in response to the United States Fifth Circuit court’s opinion in Williams v. Humble Oil and Refining Co., 432 F.2d 165 (5th Cir. 1970); Comment, La. R.S. 31:136.[5] In *817 Williams, the court found, as a matter of law, that plaintiffs’ claims for damages for drainage by a common lessee of adjoining tracts of land was considered an active breach of the obligation to protect against drainage. Williams, 432 F.2d at 181. Therefore, the court held that the plaintiffs were not required to give notice as a condition to their action for damages. Considering this holding to be erroneous, the legislature enacted Article 136 to solve the problem created in Williams insofar as that case relieved the lessor of the necessity to put the lessee in default in a suit for damages for drainage. Comment, La. R.S. 31:136.
Thus, following enactment of the Mineral Code in 1974, notice, or putting in default, was required in claims for damages resulting from drainage, as set forth in Article 136, and for claims involving passive breaches of the lessee’s obligations, as provided by former Civil Code articles 1931-1933.
In 1984, Titles III and IV of Book III of the Civil Code of 1870, which formerly contained Civil Code articles 1756 to 2291, were amended and reenacted to [ (¡contain Civil Code articles 1756 to 2057, effective January 1, 1985.[6] As part of this revision of the Obligations articles, the distinction between active and passive breaches was eliminated.
In addition, Civil Code article 1989 was enacted, which provides that the obligee is only required to put the obligor in default when the obligee is seeking damages for delay; all other damages are owed from the time the obligor fails to perform. La. C.C. art. 1989.[7] However, the addition of this article was not intended to repeal La. R.S. 31:135-139 of the Mineral Code, which provide special legislative exceptions to the general rule that a putting in default is not a prerequisite to filing suit. Comment, La. C.C. art. 1989.
Due to the elimination of the active and passive breach distinction following the 1984 revision of the Obligations articles of the Civil Code, there was a resulting “gap” relative to what types of claims required a putting in default under the Mineral Code. Comment, La. R.S. 31:136. Thus, in 1995, Article 136 was amended and reenacted to its current form:
If a mineral lessor seeks relief from his lessee arising from drainage of the propertg leased or from any other claim that the lessee has failed to develop and operate the property leased as a prudent operator, he must give his lessee written notice of the asserted breach to perform and allow a reasonable time for performance by the lessee as a prerequisite to a judicial demand for damages or dissolution of the lease. If a lessee is found to have had actual or constructive knowledge of drainage and is held responsible for consequent damages, the damages may be computed from the time a reasonably prudent operator would have protected the leased premises from drainage. In other cases where notice is required by this Article damages may be computed only from |7the time the written notice was received by the lessee.
*818 La. R.S. 31:136 (emphasis added).
Clearly, the 1995 revision to Article 136 extended the obligation of a lessor to provide pre-suit written notice for claims beyond those involving drainage. The extent of that expansion is at issue here.
Conoco and Chevron argue that the plain language of Article 136 requires written notice as a prerequisite to a judicial demand in connection with any alleged violation of the prudent operator standard. Applicants note that the Plaintiffs have alleged, in part, that the defendants failed to operate the leased premises as reasonably prudent operators. Applicants argue that an analysis of plaintiffs’ claims is not required, and that it is the Plaintiffs’ allegations which directly trigger the application of Article 136.
Plaintiffs argue that Article 136 only requires written notice for two specific types of breaches: a breach of the duty arising from drainage; and a failure to develop and operate. Plaintiffs argue that if the lessee fails to perform its obligations by not developing and operating the lease, the Plaintiffs must make written demand that the lessee develop and operate to produce revenue from the lease prior to the lease termination or other damages. Plaintiffs argue that the applicants’ assertion that any other claims that the lessee has violated the prudent operator standard is interchangeable with the statutory text is an overly broad reading of the statute. Plaintiffs assert that their allegations are not related to both development and operation; but, rather, are related to the defendant’s unreasonable and excessive conduct under the lease, resulting in claims for restoration under La. R.S. 31:122 and Terrebonne Parish School Board v. Castex Entergy, Inc., 2004-0968 (La.1/9/05), 893 So.2d 789.
1 ¡¿Plaintiffs also argue that written notice would be futile because operations have long since ceased, and Plaintiffs are not requesting that the applicants develop and operate the property. Further, Plaintiffs have asserted that because Conoco and Chevron are no longer leaseholders, they have no standing to request written notice. The record is unclear as to whether the applicants are current leaseholders on the property, or whether there is currently any oil and gas explorations activities being conducted on the property. While Plaintiffs have made such allegations in their petitions, this case is still in the early stages of development, and Conoco and Chevron have not yet answered the petitions, nor has discovery been conducted.
The court of appeal, without a detailed explanation, reversed the judgment of the trial court as to the need for amicable demand, and found that La. R.S. 31:136 did not apply to Plaintiffs’ claims. The court of appeal indicated that were the Defendants to show proof of a lease provision applicable to the relationships between Plaintiffs and Conoco and Chevron which contained a requirement for particular notice, its decision would be different.[8]
Plaintiffs’ claims against the defendants essentially arise out of contamination of their property arising from oilfield operations. Plaintiffs allege that defendants failed to remove or remediate toxins, and instead concealed and covered up the contamination. Plaintiffs allege numerous causes of action including negligence under La. C.C. art. 2315; strict liability under *819 La. C.C. art. 667 for the damages caused by the storage, discharge, and disposal of toxic and hazardous oil field waste on the plaintiffs’ property; strict liability under La. C.C. arts. 2817 and 2822 because defendants had garde of the facilities and equipment which caused the pollution; 19breach of the oil, gas and mineral leases which covered the oil and gas activities; breach of the contractual obligations under the oil, gas and mineral leases, and under La. C.C. arts. 2719 and 2720, to restore Plaintiffs property to its original condition; punitive and exemplary damages pursuant to La. C.C. art. 2315.3 for the wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances; unjust enrichment due to the unauthorized use of Plaintiffs’ lands to store and dispose of toxic contamination; and civil trespass arising from the defendants’ storage, release and disposal of oil, saltwater, production wastes, hazardous and toxic sub-stancés in such a manner as to cause those substances to enter the soil and groundwater without Plaintiffs’ consent.
Particularly at issue is Plaintiffs’ allegation in the original petition that “[djefen-dants’ conduct as described above constitutes a breach of the oil, gas and mineral leases which covered the oil and gas activities described above. Further, each defendant has breached those standards imposed by the Louisiana Mineral Code which govern the conduct of prudent operators.” (Emphasis added).
The parties agree that this is essentially a remediation/restoration case. The issue we must address is whether Plaintiffs’ claims for property damage and remediation/restoration are “claims for failure to develop and operate as a prudent operator” under Article 136.
The duty to develop and operate as a prudent operator is established in Mineral Code article 122:
A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.
La. R.S. 31:122 (Emphasis added).
110The pre-Mineral Code jurisprudence in Louisiana recognized the lessee’s duty as encompassing five distinct categories of obligations: (1) the obligation to develop reservoirs discovered; (2) the obligation to explore and test all portions of the leased premises after discovery of minerals in paying quantities; (3) the obligation to protect the leased property against drainage from wells on adjacent lands; (4) the obligation to diligently market the minerals discovered and capable of production in paying quantities; and (5) the obligation to restore the surface as near as practical on completion of operations. (Emphasis added). Comment, La. R.S. 31:122; Caskey v. Kelly Oil Company, 1998-1193, p. 6 (La.6/29/99), 737 So.2d 1257, 1261.
However, the implied “duty to restore” as part of the prudent operator standard was eventually rejected by this Court in Terrebonne Parish School Board v. Castex Energy, Inc., 2004-0968 (La.1/9/05), 893 So.2d 789. In Castex, this Court considered whether Article 122, which obligates a mineral lessee to act as a reasonably prudent operator, compels the lessee to restore the surface of the leased land to its pre-lease condition, where the lease terms do not so require and there is no evidence that the lessee excessively or unreasonably *820 exercised its rights under the lease. Castex, 04-0968 at p. 1, 893 So.2d at 791.
After examining the language of the Article, this Court noted in Castex that the express terms of Article 122 impose upon a mineral lessee only two obligations: (1) to perform the contract in good faith, and (2) to develop and operate the leased property as a reasonably prudent operator for the mutual benefit of lessee and lessor. Id. at p. 10, 893 So.2d at 797 (citing Caskey, 737 So.2d at 1261). This Court noted that the text of Article 122 does not impose an express duty to restore the surface. Rather, it simply adapts the general, “good administrator” standard of La. Civ.Code art. 2710, applicable to all leases, to the specific context of a mineral lease. Id. |n Looking to appellate court jurisprudence and former Civil Code articles 2719 and 2720, this Court specifically held that, in the absence of an express lease provision, Mineral Code article 122 does not impose an implied duty to restore the surface to its original, pre-lease condition absent proof that the lessee has exercised his rights under the lease unreasonably or excessively. Id. at p. 17, 893 So.2d at 801.
Thus, after Castex, the obligations imposed by Article 122 on a mineral lessee to act as a prudent operator include: (1) the obligation to develop reservoirs discovered; (2) the obligation to explore and test all portions of the leased premises after discovery of minerals in paying quantities; (3) the obligation to protect the leased property against drainage from wells on adjacent lands; (4) the obligation to diligently market the minerals discovered and capable of production in paying quantities. An implied duty to restore/remediate the property is no longer encompassed in the prudent operator standard. Thus, Plaintiffs’ claims for remediation/restoration are not related to any duty encompassed by Article 122.
Moreover, the explicit language of Article 136 provides for notice involving claims that the lessee has failed to develop and operate the property leased as a prudent operator. “Develop” and “operate” are terms of art within the oil and gas industry. “Develop,” as used in this industry, “contemplates any step taken in the search for, capture, production and marketing of hydrocarbons.” Patrick H. Martin & Bruce M. Kramer, Williams & Meyers: Manual of Oil and Gas Terms, p. 272 (10th Ed., 1997). “Operate” can be defined as any activity leading to the production of oil and gas. Id. at p. 731. Here, Plaintiffs’ claims relate to the remediation/restoration of their property as a result of contamination allegedly caused by defendant’s oil and gas operations. There is no allegation that the defendants failed to properly develop and operate the leases, because there is no allegation that defendants failed to search, | ^produce or market oil under the leases.
We find that the Plaintiffs’ claims in this case, aimed at remediation and restoration of their property, are separate and distinct from any claims that defendants failed to develop and operate the property as a reasonably prudent operator. Plaintiffs’ suit is not aimed at forcing defendants to engage in further exploration, prevent drainage or maximize oil production from the property, as contemplated by Article 122. Moreover, had the legislature intended Article 136 to require pre-suit notice for any circumstance alleging a violation of the prudent operator standard, rather than solely claims involving development and operation, it could have easily provided such a provision.
CONCLUSION
For the foregoing reasons, we find that the written notice requirement, and delay for performance, required by Mineral *821 Code article 136 are not applicable to the Plaintiffs’ claims. Plaintiffs have not alleged that defendants failed to develop and operate the property as a reasonably prudent operator as contemplated by Articles 122 and 136 of the Mineral Code. Thus, Plaintiffs were not required to provide defendants with pre-suit notice and an opportunity to perform prior to filing suit.
DECREE
Affirmed and remanded to the trial court for further proceedings.
VICTORY, J., dissents for the reasons assigned by WEIMER, J.
WEIMER, J., dissents and assigns reasons.
GUIDRY, J., dissents with, reasons.

 Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice Pro Tem-pore, participating in the decision.

.Made defendants in this suit were: Hilcorp Energy Company; Beta Operating Company, L.L.C.; Chevron U.S.A., Inc.; Texas Petroleum Investment Company; ConocoPhillips Co.; Union Oil Company of California; Swift Energy Company; Pacific Enterprises Oil Company; K-Exploration Co.; Sandoz & Associates, Inc.; Easley, Inc., J.O.; Winston L. Stokes; State of Louisiana, through the Dept. Of Natural Resources; State of Louisiana, through the Dept. Of Environmental Quality; Beta Operating Inc.; Shell Pipeline Company, L.P.; Plaints Pipeline, L.P.; Rodney Lemaire; Texaco Exploration and Production, Inc.; Sabine Pipeline, Inc.; Sea Robin Pipeline; and Bridgeline Gas Distribution, L.L.C.

. Sections of the Revised Statutes contained in this Title are commonly referred to as "Articles” of the Mineral Code. La. R.S. 31:1.

. Broussard v. Hilcorp Energy Co., 2008-233 (La.App. 3 Cir. 12/10/08), 998 So.2d 946.

. Broussard v. Hilcorp Energy Co., 2009-0449 (La.4/24/09), 7 So.3d 1202; Broussard v. Hilcorp Energy Co., 2009-0469 (La.4/24/09), 7 So.3d 1202.

. While statements contained in the official comments are not part of the statute and are not binding on courts, they are not discounted entirely, and we find that they provide some *817 aid in interpreting legislative intent. Terrebonne Parish School Board v. Castex Energy, Inc., 2004-0968, p. 11 (La. 1/9/05), 893 So.2d 789, 797; Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610 (La.1990); Matter of American Waste and Pollution Control Co., 642 So.2d 1258 (La.1994).

. Acts 1984, No. 331.

. La. C.C. art. 1989 provides:
Damages for delay in the performance of an obligation are owed from the time the obli-gor is put in default.
Other damages are owed from the time the obligor has failed to perform.

. The court of appeal noted that another defendant, Hilcorp Energy Company, uniquely among Defendants, attached an affidavit and leases to its exception. Hilcorp’s lease contained a provision requiring notice of "facts relied on as constituting breach” of the lease. Therefore, the court of appeal determined that the trial court correctly dismissed Plaintiffs' claims of breach of the lease contract against Hilcorp.