79 So.3d 406 (2011)
Daniel MORENO
v.
ENTERGY CORPORATION, Entergy Gulf States, Inc., Entergy Louisiana, LLC, Eagle Enterprises of Jefferson, Lafayette Insurance Company, Walgreen Louisiana Co. Inc., ABC Insurance Company and the Parish of Jefferson.
No. 09-CA-976.
Court of Appeal of Louisiana, Fifth Circuit.
October 27, 2011.
Rehearing Denied December 12, 2011.
*407 Stephen N. Elliott, Margaret A. Cassisa, Caroline D. Elliott, Ann B. Wootten, Bernard, Cassisa, Elliott, & Davis A.P.L.C., Attorneys at Law, Metairie, LA, for Defendant/Appellant Carl E, Woodward.
Marcus V. Brown, Catherine Ohlsson Gracia, Cory R. Cahn, Attorneys at Law, New Orleans, LA, for Defendant/Appellee/2nd Appellant Entergy Louisiana.
Charles S. Green, Jr., Shelly E. Chiappetta, Beahm & Green, Attorneys at Law, New Orleans, LA, for Defendant/Appellee/3rd Appellant Stewart Interior Contractors, L.L.C.
Gregory J. McDonald, Bienvenu, Foster, Ryan & O'Bannon L.L.C, Attorney at Law, New Orleans, LA, for Defendant/Appellee Landaverde Construction.
Ethan N. Penn, Brent J. Carbo, Musgrave, McLachlam & Penn L.L.C, Attorneys at Law, New Orleans, LA, for Defendant/Appellee Western World Insurance Company.
Panel composed of Judges CLARENCE E. McMANUS, JUDE G. GRAVOIS, and MARC E. JOHNSON.
*408 CLARENCE E. McMANUS, Judge.
This matter is on remand from the Louisiana Supreme Court.
Defendants/Appellants, Entergy Louisiana, LLC, Stewart Interior Contractors, LLC, and Carl E. Woodward, LLC, all appeal the dismissals of their cross-claims resulting from the granting of motions for summary judgments from the 24th Judicial District Court, Parish of Jefferson.[1]
In the aftermath of Hurricane Katrina, Carl E. Woodward, LLC ("Woodward"), general contractor, entered into a construction contract with Eagle Enterprises of Jefferson, Inc., owner of Walgreens Shopping Center located at 7100 Veterans Memorial Boulevard, Metairie, Louisiana. Woodward subcontracted with Stewart Interior Contractors, LLC ("Stewart") to install framing and exterior sheetrock. In order to assist with the labor, Stewart entered into a "Temporary Labor Contract" subcontracting with Landaverde Construction, LLC ("Landaverde") for personnel to work with Stewart.
Plaintiff Moreno was an employee of Landaverde and was working at the Walgreens job site when he was injured while near an overhead power line. Moreno filed suit against Entergy Louisiana, LLC ("Entergy"), Woodward, Stewart, and several others.
Stewart filed a claim against Landaverde and its commercial liability insurer, Western World Insurance Company ("Western World"), alleging liability arising out of a contractual indemnity clause in the "Temporary Labor Contract" between Stewart and Landaverde.
Entergy filed third-party demands against Stewart, Landaverde and Woodward, alleging that the third-party defendants were liable to Entergy for indemnity, pursuant to the Louisiana Overhead Power Line Safety Act ("OPLSA").
Motions for summary judgment were filed by several of the parties, and in a series of judgments, the trial court ruled in favor of the third-party defendants, dismissing Entergy's claims for indemnity against them. The trial court also granted judgment in favor of Landaverde and Western World, dismissing Stewart's claim against them for indemnity.
Both Entergy and Stewart appealed. This Court found that the causes of action asserted were premature, as the parties filing the claims had not yet been cast in judgment and therefore their claims did not state a cause of action. This Court rendered judgment dismissing the claims of the parties without prejudice.
Both Entergy and Stewart sought writs in the Supreme Court. On review, the Supreme Court found that this Court erred in creating an "exception of no cause of action based on prematurity" and then supplying this exception on its own motion. The Supreme Court reversed the judgment of this Court and remanded the matter for consideration of pretermitted issues not addressed in the original opinion.

STANDARD OF REVIEW Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, show that there is *409 no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P.art. 966(B).
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765; Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751.
On appeal, summary judgments are reviewed de novo. An appellate court asks the same questions as the district court in determining whether summary judgment is appropriatewhether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Smith, 639 So.2d at 750.
Furthermore, the issue in this case involves the interpretation of the Overhead Power Line Safety Act, LSA-R.S. 45:141-144. Thus, the issue in this case is a question of law, subject to review by the appellate court under a de novo standard of review. Broussard v. Hilcorp Energy Co., 09-0449 (La.10/20/09), 24 So.3d 813, 816.
Finally, we note that in his concurrence in this case, Justice Victory contends that the issue of Entergy's liability is ripe for determination. He states that"... a clear reading of La. C.C.P. arts. 1111-1116 demands that the third party demand is not premature." Moreno, supra, 62 So.3d at 708.

ENTERGY'S APPEAL AGAINST LANDAVERDE, STEWART AND WOODWARD
In his petition, plaintiff alleged that Entergy's power lines were not compliant with applicable safety codes, regulations and requirements, and that this non-compliance was a contributing cause of the accident.
Entergy filed its third party demands against Landaverde, Stewart and Woodward based upon the indemnity provisions of LSA-45:144(A) which provides:
If a violation of this Chapter results in physical or electrical contact with any high voltage overhead line, the person violating this Chapter shall be liable to the owner or operator of the high voltage overhead line for all damages, costs, or expenses incurred by the owner or operator as a result of the contact.
In stating its third-party demand, Entergy contended that prior to the incident, Woodward contacted it and asked that it relocate the electrical power lines to provide clearance for the construction project. Entergy prepared the plans for relocation, and contacted Woodward for approval, for which it was waiting at the time the accident occurred. Entergy stated that Woodward indicated that no work would be performed until after the power line was removed. Entergy further contended that neither Woodward, Stewart or Landaverde notified it of the work to be performed (moving the scaffolding) at least 48 hours prior to its start. At the hearing on the motion for summary judgment, counsel for Entergy admitted that Entergy had stated that the scaffolding needed to be moved.
The trial court granted the motions for summary judgment filed by Landaverde, Stewart and Woodward. The summary judgments dismissed Entergy's third-party demands against Landaverde, Stewart and Woodward with prejudice on the basis that Entergy did not have indemnity rights pursuant to the OPLSA.
*410 On appeal, Entergy alleges that the trial court erred in granting the motions for summary judgment filed by Landaverde, Stewart and Woodward. Entergy contends that the trial court disregarded the language of LSA-R.S. 45:144 of the Overhead Power Line Safety Act, (OPLSA, LSA-R.S. 45:141 et seq.), which provides that the owner of a high voltage overhead power line is entitled to recover all damages from "persons responsible" who violate the Act, in holding that Entergy was precluded, as a matter of law, from being fully indemnified by the "persons responsible" for violating the Act. Entergy avers that the purpose of the OPLSA is to make the persons responsible for violating the Act responsible if they fail to provide the required advance notification, thereby depriving Entergy of the opportunity to inspect the proposed work site and institute appropriate safety measures. Entergy further avers that, pursuant to LSA-R.S. 45:144, it is entitled to indemnity for "all damages" incurred by Entergy from the persons responsible for violating the Act. Entergy contends that the only way to force a company to comply with the Act is to ensure that it is responsible for "all damages," including the damages that might be owed by Entergy to a plaintiff such as Moreno as a result of its own negligence, if the company fails to comply with the Act.
Appellees contend that the intent of the OPLSA is to provide that Entergy be reimbursed for direct damages if there is noncompliance with the Act, and not to indemnify Entergy for its own acts of negligence, including any tort damages for which Entergy might be liable to Moreno.
The issue of whether or not the statute requires that Entergy be indemnified for its own acts of negligence appears to be res nova.
The Louisiana Supreme Court has stated that:
The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.
The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development, 10-0193 (La.1/19/11), 56 So.3d 181, 187-188, citing M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La.7/1/08), 998 So.2d 16, 27 (internal citations omitted).
In this case, Entergy would have this Court rule that it is entitled to indemnity for its own acts of negligence. We do not believe that the legislature intended such a result. We are supported in this conclusion *411 by the OPLSA itself. LSA-R.S. 45:144(B) states that "Nothing contained in this Chapter shall be construed to alter, amend, restrict or limit the liability of an owner or operator of the high voltage line under current law." Reading this provision along with the text of the OPLSA as a whole, we believe that LSA-R.S. 45:144 does not allow indemnification of Entergy for its own negligence.
In addition, it is clear from the committee discussion of House Bill 932, 2001 (enacted as the OPLSA) that the legislature did not intend that Entergy's liability be transferred in the event of its own negligence. At the committee hearing, a representative of the Association of General Contractors voiced concern specific to the provision for indemnity, arguing that it would create indemnity for a utility's own negligence, stating that "[This bill is] way too broad and creates and shifts liability where it just should not occur." A power company representative responded that, "This bill does not shift responsibility. The utility company remains liable for the utmost degree of care for the safety of people." This representative also stated that "So no responsibility is taken away from the utility. The utility is still liable. There is no liability shift. There is no strict liability. It's just if you knowingly violate the law and choose not to be safe then you would have to indemnify."
We are also supported in our conclusions by consideration of other provisions of Louisiana law. For example, LSA-R.S. 9:2780 of the Oilfield Indemnity Act nullifies any provision in any agreement to which the statute is applicable in which that provision requires defense and/or indemnification where there is any negligence or fault on the part of the indemnitee. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987).
In addition, although a party may contract for indemnity for liability for its own acts of negligence, that contractual provision for indemnity must be strictly construed and must be an express and unequivocal statement that a party is to be indemnified for that party's own negligence. Boykin v. PPG Industries, Inc., 08-0117 (La.App. 3 Cir. 6/18/08), 987 So.2d 838, writ denied, 08-1635, 08-1640 (La.10/31/08), 994 So.2d 537, citing Perkins v. Rubicon, Inc., 563 So.2d 258 (La.1990).
Finally, we are of the opinion that under Louisiana's system of comparative fault tort law, Entergy's liability to plaintiff is limited to its percentage of fault for its own acts of negligence contributing to the accident. To the extent that comparative fault can be assessed against the third-party defendants, Entergy would not be liable for that proportionate share, and would not require indemnification.[2]
Accordingly, we find no error in the trial court's rulings in favor of Woodward, Stewart and Landaverde, dismissing Entergy's cross-claims/third-party demands for indemnity with prejudice.

WOODWARD'S APPEAL AGAINST WESTERN WORLD AND LANDAVERDE
Woodward appeals the grant of Western World's summary judgment against it, which found that Western World provided no coverage to Woodward under Western World's CGL policy issued *412 to Landaverde. Woodward also appeals the grant of Landaverde's Motion for Summary Judgment, which dismissed Woodward's cross-claim against it.
The procedural history is as follows. As a result of Entergy's third-party demand against Woodward, Woodward filed a cross-claim against Landaverde and a third-party demand against Western World, claiming that the temporary labor contract between Landaverde and Stewart "included an indemnification clause requiring Landeverde [sic] to defend, indemnify and save and hold Stewart and any property owner, general contractor and/or any other party Stewart was working with or for, contractually or otherwise, harmless from any and all claims asserted against Stewart and its general contractor by any person involving the work performed by Landeverde [sic] and/or its employees."
On May 4, 2009, Western World filed a motion for summary judgment against Woodward, averring that it did not owe any coverage to Woodward vis-à-vis Woodward's cross-claim against Landaverde. On this same date, Western World filed a motion for summary judgment against Stewart, which set forth arguments similar to those arguments it asserted against Woodward. On July 8, 2009, the trial court granted Western World's motion for summary judgment against Woodward, and further granted Landaverde's oral motion for summary judgment against Woodward with regard to Woodward's cross-claim.
Woodward notes that its summary judgment against plaintiff Moreno was granted, which held that Woodward is Moreno's statutory employer, and thus all of Moreno's tort claims against Woodward were dismissed with prejudice. This judgment has not been appealed. Woodward argues, therefore, that because it is Moreno's statutory employer, Entergy will be unable to seek contribution from Woodward if Entergy is ultimately found liable to Moreno. This appeal by Woodward, therefore, is brought in an "abundance of Caution" in the event that this Court finds that Woodward owes indemnification to Entergy under the OPLSA.
Western World argues on appeal, however, that the basis for its motion for summary judgment against Woodward was the "employer's liability" exclusion contained in the commercial general liability policy issued to Landaverde, which precluded coverage for bodily injury to an employee of the insured ("which arose out of and in the course of employment by the insured, and any obligation to share damages with or repay someone else who must pay damages because of the injury.") Western World points out that the damages sought in this case are for bodily injury to Moreno, an employee of the insured Landaverde. Western World further notes that Woodward's appellate brief does not address the "employer's liability" exclusion, which was the basis for its motion against Woodward, nor does it attempt to address any provision of or coverage provided by the policy. What Woodward did in the trial court, and does on appeal, is attempt to cast the damages sought in this case (plaintiff Moreno's damages) as damages to itself (its contingent liability to Entergy under the OPLSA, and/or Woodward's court cost of defense in this suit), a position that the trial court rejected.
However, it is clear that the exclusion in Western World's CGL policy applies in this case. Louisiana courts have upheld similar exclusion under similar facts, recognizing that the stated purpose of a CGL policy is to provide coverage for injuries to third persons only, not to provide coverage for injuries sustained by employees. Because there is no coverage to *413 Woodward under the policy under this exclusion, the terms of the Temporary Labor Contract's indemnity provisions are not the issue, as Woodward attempts to argue.
Accordingly, the grant of summary judgment in favor of Western World and against Woodward is affirmed.
Finally, Woodward's cross-claim against Landaverde seeks indemnification from Landaverde, pursuant to the indemnification clause of the Temporary Labor Contract between Stewart and Landaverde, in the event Woodward is found liable to Entergy under the OPLSA. Because we find that Woodward owes no indemnity to Entergy under the OPLSA, this issue is moot.

STEWART'S APPEAL AGAINST LANDAVERDE AND WESTERN WORLD
Lastly, Stewart appeals the trial court's ruling dismissing its claims against Landaverde and Western World, in which it seeks indemnification should it be found liable to Entergy under the OPLSA. Again, because we find that Stewart owes no indemnity to Entergy under the OPLSA, this issue is moot.

CONCLUSION
For the above discussed reasons, the rulings of the trial court dismissing Entergy's claims against Landaverde, Stewart and Woodward, and dismissing Woodward's claims against Western World are affirmed. Also, Woodward's cross-claim against Landaverde and Stewart's claims under appeal against Landaverde and Western World are dismissed as moot.
AFFIRMED
JOHNSON, J., dissents with reasons.
JOHNSON, J., dissents with reasons.
I, respectfully, disagree with the majority opinion that the Louisiana Supreme Court intended for us to review the merits of this appeal for two reasons. First, the Supreme Court's opinion simply addressed the procedural faults with this Court's original opinion. The Supreme Court reversed and remanded the case to this Court for consideration of the issues that were not addressed because of the improper dismissals. Second, the pretermitted issues referred to in the Louisiana Supreme Court opinion were the issues regarding the granting of several Motions for Summary Judgment by the trial court. The merits of a case are not considered on a Motion for Summary Judgment. (See, JSB Interests, LLC v. Hanover Ins. Co., 10-487, p. 10 (La.App. 5 Cir. 3/9/11); 62 So.3d 211, where this Court found, "It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised, for the weighing of conflicting evidence has no place in summary judgment procedure.") Even on de novo review and reviewing the issues as the trial court would, I opine that we are procedurally barred from determining the merits of this case and are outside of our jurisdiction.
Assuming that the merits of the case were properly before us, I dissent from the majority opinion for the following reasons.

Entergy's Appeal
Entergy, through its cross-claims against Stewart, Landaverde and Woodward, alleged the OPLSA provisions were violated by its co-defendants due to lack of proper notice of the commencement of the work, and they were the "persons responsible" for Moreno's injuries. As a result, Entergy averred it is entitled to be indemnified, pursuant to LSA-R.S. 45:144 of the *414 OPLSA, for any of the damages it incurred from the accident from Stewart, Landaverde and Woodward.
LSA-R.S. 45:143 provides, in pertinent part,
A. When any person desires to temporarily carry on any function, activity, work, or operation in closer proximity to any high voltage overhead line than permitted by this Chapter, the person or persons responsible for the work to be done shall promptly notify the owner or operator of the high voltage overhead line prior to the scheduled commencement of the work. Such notice shall be reasonable, considering the work to be done; however, the notice shall not be less than forty-eight hours prior to the scheduled commencement of the work, exclusive of holidays and weekends, except in emergency situations that include police, fire, and rescue emergencies, in which case the notice shall be made as soon as possible.
B. The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner or operator of the high voltage overhead lines and the person or persons responsible for the work to be done. The owner or operator of the lines shall initiate the agreed upon safety arrangements within three working days and shall complete the work promptly, subject to emergency weather conditions. Arrangements may include placement of temporary mechanical barriers separating and preventing contact between material, equipment, or persons and high voltage overhead lines; temporary deenergization and grounding; temporary location or raising of the lines; or by other means deemed appropriate by the owner or operator of the lines.
LSA-R.S. 45:144 further provides, in pertinent part,
A. If a violation of this Chapter results in physical or electrical contact with any high voltage overhead line, the person violating this Chapter shall be liable to the owner or operator of the high voltage overhead line for all damage, costs, or expenses incurred by the owner or operator as a result of the contact.
B. Nothing contained in this Chapter shall be construed to alter, amend, restrict, or limit the liability of an owner or operator of the high voltage line under current law.
After reading LSA-R.S. 45:143 in conjunction with LSA-R.S. 45:144, it is clear and unambiguous that persons who violate the notice requirements are considered as the "persons responsible" for the result of the physical or electrical contact and are liable to the owner or operator of the high voltage line for all damages, costs, or expenses incurred by the owner or operator as a result of the contact. Simply put, if Stewart, Landaverde and Woodward violated LSA-R.S. 45:143, Entergy should be entitled to indemnification for the damages resulting from the physical or electrical contact of Moreno with the high voltage line pursuant to LSA-R.S. 45:144. If Stewart, Landaverde and Woodward did properly notify Entergy and are not in violation of LSA-R.S. 45:143, then Entergy is not entitled to indemnification for the damages resulting from the physical or electrical contact of Moreno with the high voltage line. Because the statutes are clear and unambiguous and their applications do not lead to absurd consequences, there is no need for this Court to search *415 the intent of the Louisiana legislature. See, Pumphrey v. City of New Orleans, 05-0979 (La.4/4/06); 925 So.2d 1202, 1209; LSA-C.C. art. 9. Consequently, LSA-R.S. 45:143 and 144 should be applied as written.
Additionally, I disagree that the conclusions of the majority opinion are supported by LSA-R.S. 9:2780 of the Oilfield Indemnity Act. In the Act, the legislature specifically stated its intent that certain indemnification provisions are null and void and against public policy. In the OPLSA, the legislature could have very well included restrictions that limit the extent of damages, costs, or expenses incurred by the owner or operator. However, the legislature did not apply the restrictions of LSA-R.S. 9:2780 to the OPLSA, and I believe that was purposefully done.
Because the trial court did not determine whether Stewart, Landaverde and Woodward were "persons responsible" in violation of LSA-R.S. 45:143, I opine summary judgment is not the proper procedural mechanism to dispose of that genuine issue of material fact of Entergy's cross-claims. Therefore, I would find the trial court erred in granting the motions for summary judgment of Stewart, Landaverde and Woodward against Entergy and reverse the dismissals of Entergy's cross-claims.

Stewart's Appeal
On appeal, Stewart alleges that the trial court erroneously granted the motion for summary judgment by Landaverde, which dismissed its cross-claim, because Stewart is entitled to seek indemnity from Landaverde pursuant to the contract indemnity clause in the "Temporary Labor Contract" because Landaverde's employees were negligent in causing the accident. Additionally, Stewart alleges that the trial court erroneously granted Western World's motion for summary judgment, which dismissed its third-party demand, because the "Temporary Labor Contract" between Western World's insured, Landaverde, and Stewart is an "Insured Contract" under the terms of Western World's insurance policy.

Indemnity Agreement
Stewart contends that the indemnity agreement at issue is valid and enforceable and specifically states that 1) Landaverde must indemnify Stewart for negligent acts of Landaverde's employees, which would include Moreno; and/or, 2) Landaverde must indemnify Stewart for damages, losses, etc. arising out of the use of Stewart's equipment, tools and scaffolding.
Section 1 entitled "Indemnification" of the "Temporary Labor Contract" provides, in pertinent part:
LCI[3] agrees to defend, indemnify and save and hold Client [Stewart] (and any property owner, general contractor and/or other party Client is working with or for, contractually or otherwise) harmless from any and all losses, damages and liability claims, demands, suits, causes of action, costs of expenses resulting from injury, costs, including but not limited to reasonable attorney fees and court costs, damages, death, harm or loss to Client or any person arising or out of act(s), action(s), behavior and/or negligence, either solely, in concert or in part, of LCI or its employees ... LCI also releases Client from any and all claims, losses, costs including attorney's fees, damages, injury, death expenses and liability arising from or in connection with the undersigned use of equipment, tools, scaffolding, etc.; and agrees to hold harmless and indemnify Client and their agents and employees from *416 any and all claims by whomsoever made, losses, costs including attorney's fees, damages, injury, death expenses, and liability arising from or in connection with any acts or omissions of or the use of said equipment, tools, scaffolding, etc.
On its face, this contract, which was signed by representatives from both sides, provides for Stewart's indemnity from Landaverde for any and all losses, damages and liability claims, demands, suits, causes of action and costs of expenses resulting from injury. Stewart's cross-claim asserted that it is entitled to recover all costs from Landaverde pursuant to the terms of the contract. As such, I would find the trial court erred in dismissing Stewart's cross-claim against Landaverde and find there is a genuine issue of material fact remaining as to whether Stewart can be indemnified by Landaverde in the event Stewart is found liable in this matter. Therefore, I would reverse the trial court's dismissal of Stewart's cross-claim against Landaverde.

"Insured Contract" Provision
Stewart avers that Western World's general liability policy insuring Landaverde provides coverage for negligent acts committed by Landaverde's employees because the "Temporary Labor Contract" is an "Insured contract" under the terms of the policy.
Under the "Exclusions" section of Western World's "Commercial General Liability Coverage Form," it provides, in pertinent part:
e. Employer's Liability
"Bodily injury" to
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business;
* * *
This exclusion applies:
(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract." (Emphasis added).
Further, under "Section V-Definitions", the policy provides,
9 "Insured contract" means:
f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.
The trial court in this matter granted Western World's motion for summary judgment against Stewart and dismissed all claims made by Stewart against Western World with prejudice. The trial court held there was no coverage provided by the Western World policy of insurance for any claims made by Stewart against Landaverde. However, I disagree with that finding.
The "Temporary Labor Contract" between Stewart and Landaverde states that Stewart could be indemnified by Landaverde for any and all losses, damages and liability claims, demands, suits, causes of action, and costs of expenses resulting from injury and liability arising from or in connection with any acts or omissions of or the use of scaffolding. The "Temporary *417 Labor Contract" falls within the scope of the "Insured contract" definition of Western World's policy. As such, it is an exclusion to the provisions of the policy regarding "Employer's Liability."
In this matter, I would hold that there is a remaining genuine issue of material fact as to whether Stewart is liable under a tort liability and would be subject to indemnification from Landaverde and Western World. Therefore, I would reverse the trial court's grant of Western World's motion for summary judgment against Stewart.

Woodward's Appeal

Indemnification from Landaverde
After a hearing on the merits, the trial court granted Landaverde's motion for summary judgment and dismissed all of the claims made by Woodward with prejudice. I disagree with the trial court and would find that the same provisions that apply to Stewart under the "Temporary Labor Contract" also apply to Woodward as a general contractor and/or other party as described in the contract as who the "client" is working with or for. In consequence, I would reverse the trial court's grant of Landaverde's motion for summary judgment against Woodward.

Indemnification from Western World
The trial court dismissed Woodward's cross-claim against Western World and held that no coverage is provided by the Western World policy of insurance for any of the claims by Woodward against Landaverde. Because I would reverse the trial court's dismissal of Woodward's cross-claim against Landaverde, I would also reverse the trial court's grant of Western World's motion for summary judgment against Woodward and find there is a remaining genuine issue of material fact as to whether Woodward is liable under a tort liability and would be subject to indemnification from Western World.
Based upon the foregoing reasons, I would reverse the trial court's granting of the motions for summary judgment and the dismissals of the cross-claims of Entergy Louisiana, LLC, against Carl E. Woodward, LLC, Stewart Interior Contractors, LLC, and Landaverde Construction, LLC; the dismissal of Stewart Interior Contractors, LLC's cross-claim against Landaverde Construction, LLC and the third-party claim against Western World Insurance Company; and, the dismissal of Carl E. Woodward, LLC's cross-claim against Landaverde Construction, LLC and Western World Insurance Company. Additionally, I would remand the matters to the trial court for further proceedings.
NOTES
[1] The facts and procedural history are detailed in this Court's prior opinion, Moreno v. Entergy Corp., 09-976 (La.App. 5 Cir. 9/10/10), 49 So.3d 418, 419-421, rev'd 10-2281 (La.2/18/11), 62 So.3d 704, and 10-2268 (La.2/18/11), 64 So.3d 761.
[2] The Louisiana Supreme Court has declared that "In cases of injury occurring as a result of contact with overhead power lines, principles of negligence, rather than absolute or strict liability, apply, and we assess the liability of the various parties to the accident under a duty-risk analysis." Foley v. Entergy Louisiana, Inc., 06-0983 (La. 11/29/06), 946 So.2d 144, 154.
[3] LCI is the acronym for Landaverde Construction, Inc.