STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-185

KATHLEEN MARGAVIO MITCHELL

VERSUS

SUCCESSION OF ALICE S. MARGAVIO

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20224935
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GARY J. ORTEGO**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Calvin Theodore Guidry**
**Attorney at Law**
**P.O. Box 53722**
**Lafayette, La 70505**
**(337) 232-6183**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Kathleen Margavio Mitchell**

**Vincent Joseph Saitta**
**Colomb & Saitta**
**113 Oil Center Drive**
**Lafayette, LA 70503**
**(337) 231-5150**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Kathleen Margavio Mitchell**

**David Michael Kaufman**
**Attorney at Law**
**P.O. Box 4604**
**Lafayette, LA 70502-4604**
**(337) 233-5150**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Cynthia Margavio Fox as Admin S/N of Alice Margavio**

**ORTEGO, Judge.**

This case involves whether a usufruct under La.Civ. Code art. 890 granted to a surviving spouse, via testament, attaches to proceeds from the sale of former community immovable property sold by both the naked owners and usufructuary. Also, at issue is whether a naked owner is entitled to the value of a vehicle traded towards the purchase of another vehicle by the usufructuary.

The trial court found that the usufruct did not attach to the proceeds of the sale and that the value of the vehicle was zero based on usual wear and tear, thereby dismissing the plaintiff/naked owner's proof of claim for her share of the proceeds of the sale and value of the vehicle upon the usufructuary's death. The plaintiff/naked owner appeals. For the reasons herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

Joseph Charles Margavio was married to Alice Scallan Margavio of which four children were born: Kathleen Margavio Mitchell (Kathy); Cynthia Margavio Fox (Cindy); Debra Margavio (Debbie); and Charles Margavio (Charles). On May 4, 1981, Joseph Charles Margavio died, and by judgment dated March 28, 1984, his four children were placed into possession of his estate, as the naked owners, subject to a usufruct in favor of his widow, their mother, Alice Scallan Margavio (Alice).

Over the course of the years, Alice and her children alienated multiple properties. Relevant to this proceeding, Alice traded in a 1978 Mercury Marquis as payment to purchase another vehicle, a Peugeot, the date of which this transaction is not in the record. Further, in December of 1998, Alice and her children, as the naked owners, agreed and sold a certain former community immovable property, known as the Quincy Street Property.

Thereafter, on March 23, 2007, Alice died. Alice's succession proceedings were opened in August of 2010 by her daughter and succession representative, Cindy.

On November 15, 2010, Kathy submitted a proof of claim to Alice's succession which included a claim for an extra portion of Alice's estate, specifically claiming her share of the 1978 Mercury Marquis with an alleged value of $2,500.00 and a claim for her alleged share of the proceeds from the Quincy Street Property sale, previously sold, with an alleged value of $19,908.53. This proof of claim was denied by Alice's succession and sat dormant while Alice's succession remained open.

On September 14, 2022, Kathy filed this civil action against Alice's succession for satisfaction of the proof of claim she submitted, and which was denied in November of 2010. A trial on the merits was held on November 6, 2023, wherein the trial court reached a judgment, which in part granted Kathy $3,422.62 against Alice's succession, with said amount reflecting Kathy's interest in certain assets inherited from Joseph Charles Margavio, which is not at issue in this appeal. The trial court's judgment further denied Kathy's claim for an accounting of all other assets and/or items claimed in the proceedings, including Kathy's claim for her share of the 1978 Mercury Marquis and of the proceeds from the Quincy Street Property sale, previously sold by all parties.

Kathy filed this appeal before us and presents two assignments of error for review.

**ASSIGNMENTS OF ERROR**

I.    The trial court erred in finding that the usufruct of immovable property, awarded to Alice Scallan Margavio by the Judgment (of Possession) rendered in Succession of Joseph Charles Margavio, ended with the sale of property subject thereto, despite clear caselaw to the contrary from this Honorable Court and clear statement of law.

II.    The trial court erred in considering that Alice Scallan Margavio received no compensation for the sale of a 1978 Mercury Marquis for which her estate must account.

STANDARD OF REVIEW

When the issue in an assignment of error involves statutory interpretation, it is a question of law, and is reviewed by this court under a de novo standard of review. *Broussard v. Hilcorp Energy Co.*, 09-449, (La. 10/20/09), 24 So.3d 813. However, a review of factual determinations is done under the manifest error standard, when there is a conflict in testimony, wherein reasonable evaluations of credibility and reasonable inferences of fact are not disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

**ASSIGNMENT OF ERROR NUMBER ONE**

Kathy asserts that the trial court erred in finding that the usufruct over the Quincy Street property ended with the sale of that property and did not transfer to Kathy's share of the proceeds from the sale. We must determine whether that finding was in error.

"If the deceased spouse is survived by descendants, the surviving spouse shall have a usufruct over the decedent's share of the community property to the extent that the decedent has not disposed of it by testament. This usufruct terminates when the surviving spouse dies or remarries, whichever occurs first." La.Civ.Code art. 890. Here, Alice, as surviving spouse of Joseph Charles Margavio, was granted a usufruct over his half of their former community property by judgment in Joseph Charles Margavio's succession. There is nothing in that judgment indicating that his intent was to create a testamentary and not a legal usufruct under La.Civ.Code art. 890.

Louisiana Civil Code art. 616 (emphasis added) states:

> When property subject to usufruct is sold or exchanged, whether in an action for partition or by agreement between the usufructuary and the naked owner or by a usufructuary who has the power to dispose of

nonconsumable property, *the usufruct **terminates** as to the nonconsumable property sold or exchanged*, but as provided in Article 568.1, the usufruct attaches to the money or other property received by the usufructuary, *unless the parties agree otherwise*. Any tax or expense incurred as the result of the sale or exchange of property subject to usufruct shall be paid from the proceeds of the sale or exchange and shall be deducted from the amount due by the usufructuary to the naked owner at the termination of the usufruct.

Louisiana Civil Code Article 568.1 (emphasis added) states:

If a thing subject to the usufruct is donated inter vivos by the usufructuary, he is obligated to pay to the naked owner at the termination of the usufruct the value of the thing as of the time of the donation. If a thing subject to the usufruct is otherwise alienated by the usufructuary, the usufruct attaches to any money or other property *received by the usufructuary*. The property received shall be classified as consumable or nonconsumable in accordance with the provisions of this Title, and the usufruct shall be governed by those provisions subject to the terms of the act establishing the original usufruct. If, at the time of the alienation, the value of the property received by the usufructuary is less than the value of the thing alienated, the usufructuary is bound to pay the difference to the naked owner at the termination of the usufruct.

In this case, Kathy first argues that under La.Civ.Code arts. 616 and 568.1, Alice's usufruct survived and attached to Kathy's share of the proceeds from the sale of the Quincy Street property by operation of law. Therefore, according to Kathy, upon Alice's death, Alice's newly created usufruct by operation of law was terminated, and, as such, Kathy is entitled to receive her share of the proceeds, $19,908.53, from Alice's succession.

We find Kathy's argument regarding application of article 616's invocation of article 568.1 is misguided. At the outset, we find pursuant to article 616's plain language and, alternatively, considered with the language of La.Civ.Code art. 622, it is clear that Alice's article 890 usufruct was terminated over Kathy's share of the proceeds from the sale of the Quincy Street property. Thus, pursuant to article 616, Alice's article 890 usufruct terminated when Kathy, along with the other naked owners, and Alice, the usufructuary, agreed to sell and actually sold the property.

4

Moreover, under La.Civ.Code art. 622, "[a] usufruct terminates by confusion when the usufruct and the naked ownership are united in the same person." Here, we find that Kathy received the proceeds, and, as such, had usus, fructus, and abusus, i.e., perfect ownership, over those proceeds prior to giving them to Alice. As such, and without dispute, Alice's article 890 usufruct was terminated at the time of the sale, by all parties, of the Quincy Street property.

Given this termination, it is incumbent on Kathy to prove that a new usufruct was formed. Kathy contends that article 616's language invoking article 568.1 occurred in this case, and, therefore, a new usufruct attached to the proceeds by operation of law.

The plain language of article 616 invoking article 568.1 requires that the proceeds from the sale be "received by the usufructuary" in order for a new usufruct to be formed. Likewise, article 568.1 applies, and a new usufruct attaches to any proceeds when those proceeds are "received by the usufructuary."

Here, it is clear from the record that Kathy failed to prove Alice received Kathy's share of the proceeds as opposed to Kathy receiving those proceeds, and thereafter, giving them to Alice. We note the conflicting testimony as to whether Kathy physically received a check at the 1998 closing, endorsed the check, and gave it to Alice. Kathy asserted that she did not receive a check at that closing. Contrarily, Charles testified that Kathy did get a check at the 1998 closing, stating that he specifically remembered Kathy endorsing her check, pushing it to Alice, and asserting that Alice needed it more than she did. Additionally, Charles' testimony that Kathy received a check was corroborated by Debbie, their sister who was also present at the closing.

5

Regardless of this disputed testimony, Kathy acknowledged in her testimony that she "had the power to decide where the money went," and had "complete control" over her share *prior to* determining whether Alice could use it. Here, Kathy's own testimony supports a finding that Kathy received her share of the proceeds, and thus perfect ownership, prior to giving the proceeds back to Alice. Thus, we find that it was Kathy's burden to prove the facts necessary for existence/continuation of a usufruct by operation of law over her share of the proceeds of the Quincy Street property, and she has failed to do so.

Additionally, our finding that Kathy proved that Alice only later received Kathy's share of the proceeds from the Quincy Street sale aligns with a pattern established by Alice and her children in other previous sales of estate/community immovable property. Specifically, the record indicates that previously when Alice and her children were selling multiple former community properties, the proceeds from those sales were distributed to both Alice and her children with each party receiving their pro-rata share from those sales, and each time Alice's usufruct was terminated.

Finally, regarding Kathy's argument of article 568.1's application, it is required that the "thing subject to the usufruct," the Quincy Street property, "is otherwise alienated by the usufructuary." In this matter, it is undisputed that the Quincey Street property was alienated by both Alice and Kathy, along with the other children, agreeing to sell and signing the sale documents, not just the usufructuary unilaterally selling the property. Thus, article 568.1 does not apply to this sale.

Given the above, we find the trial court correctly found that Alice's usufruct over the Quincy Street property ended with the sale of that property and did not transfer to Kathy's share of the proceeds from the sale. Thus, this assignment of error lacks merit.

# ASSIGNMENT OF ERROR NUMBER TWO

In her second assigned error, Kathy contends that the trial court erred by finding that Alice received no compensation for the alienation of a 1978 Mercury Marquis for which Alice's estate must provide an accounting. It is undisputed that the 1978 Mercury Marquis was partially owned by Kathy and her other siblings, as naked owners, at the time of alienation and subject to Alice's usufruct. It is also undisputed that Alice traded the 1978 Mercury Marquis for another vehicle, a Peugeot. Finally, it is undisputed that Alice later donated that Peugeot to a Peugeot shop to use for parts.

We note that both the 1978 Mercury Marquis and the Peugeot, as vehicles, are corporeal movables "gradually and substantially impaired by use, wear, or decay" pursuant to La.Civ.Code art. 568. As such, provided that Alice "acts as a prudent administrator," she may alienate them as usufructuary.

## I.    *Trading the 1978 Mercury Marquis for the Peugeot.*

Kathy contends that because Alice's usufruct ended at that time she traded the 1978 Mercury Marquis, Kathy is entitled to the value the 1978 Mercury Marquis had at that time, which she contends was $2,500.00. Louisiana Civil Code Article 568.1 states, in pertinent part, the following:

> If a thing subject to the usufruct is otherwise alienated by the usufructuary, the usufruct attaches to any money or other property received by the usufructuary. The property received shall be classified as consumable or nonconsumable in accordance with the provisions of this Title, and the usufruct shall be governed by those provisions subject to the terms of the act establishing the original usufruct. If, at the time of the alienation, the value of the property received by the usufructuary is less than the value of the thing alienated, the usufructuary is bound to pay the difference to the naked owner at the termination of the usufruct.

Pursuant to La.Civ.Code art. 568.1, Alice's usufruct attached to the Peugeot as "other property received by the usufructuary" from Alice's alienation of the 1978

Mercury Marquis. Thus, Kathy's demand for the value of the 1978 Mercury Marquis is not founded on any relevant factors as to any entitlement she may allege to have against Alice's succession. Rather, Kathy needed to prove what difference existed, if any, between the value of the 1978 Mercury Marquis and the Peugeot when Alice traded vehicles. There is no evidence in the record of a value difference between the vehicles at the time of the alienation.

Accordingly, the trial court correctly denied Kathy's claim for the value of the 1978 Mercury Marquis on the date of its alienation. Alice's usufruct attached to the Peugeot when Alice alienated the 1978 Mercury Marquis by trading it for the Peugeot.

II. *Donating the Peugeot*

We note that Alice's estate does owe Kathy, and other naked owners, for the value of the Peugeot, if any, at the time of its alienation/donation. Specifically, La.Civ.Code art. 568.1 states, in pertinent part: "[i]f a thing subject to the usufruct is donated inter vivos by the usufructuary, he is obligated to pay to the naked owner at the termination of the usufruct the value of the thing as of the time of the donation."

Here, the uncontradicted testimony is that because the Peugeot was worn out by normal wear and tear, Alice received no value for it upon disposition, and the value of the Peugeot was $0.00 upon its donation. In Kathy's testimony, she acknowledged that the Peugeot "went kapooie" and was "worn out by normal wear and tear." Charles also testified that the Peugeot was "worn out by normal wear and tear," and that the Peugeot was donated to a repair shop, who took it for scrap parts.

Given the above, we find no error by the trial court in denying Kathy compensation for her share of the 1978 Mercury Marquis when it was traded in by Alice. At that time, the usufruct moved from the 1978 Mercury Marquis to the Peugeot, and Kathy failed to prove what difference existed, if any, between their

8

values.  Finally, the undisputed evidence in the record shows that the Peugeot had no value upon its donation and termination of Alice's usufruct.

## CONCLUSION

Appellant, Kathleen Margavio Mitchell, raises two assignments of error.  We find no merit to either assignment raised.  As such, we affirm the trial court's judgment.  Costs of these proceedings, including this appeal, are assessed to Kathleen Margavio Mitchell.

**AFFIRMED.**