# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 11-1524


## JOHN BENJAMIN, SR., ET AL.

## VERSUS

## WILLIAM ZEICHNER, M.D.


**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## TENTH JUDICIAL DISTRICT COURT
## PARISH OF NATCHITOCHES, DOCKET NO. 76,632
## HONORABLE DEE HAWTHORNE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***


## SYLVIA R. COOKS
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and Elizabeth A. Pickett, Judges.


**REVERSED AND REMANDED.**


**Pickett, J., concurs.**

Susan E. Hamm
7600 Fern Avenue, Building 900
Shreveport, LA  71105
(318) 797-0100
**ATTORNEY FOR PLAINTIFFS/APPELLANTS**
      John Benjamin, Sr., et al.

Lawrence W. Pettiette, Jr.
Joseph S. Woodley
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P.
400 Texas Street, Suite 400
P.O. Box 1786
Shreveport, LA  71166-1786
(318) 221-1800
**ATTORNEY FOR DEFENDANT/APPELLEE**
      William Zeichner, M.D.

**COOKS, Judge.**

The plaintiffs-appellants appeal the trial court's ruling that excluded its expert witness from testifying in this medical malpractice case. For the reasons that follow, we find the trial court erred in not allowing the plaintiffs' expert to testify and in granting defendant's motion for directed verdict.

## FACTS AND PROCEDURAL HISTORY

On August 25, 2000, Margaret Benjamin was treated by Dr. William Zeichner in the emergency room at Natchitoches Parish Hospital. Ms. Benjamin was complaining of abdominal pain which she related had been bothering her for two to three days. Ms. Benjamin was 62 years old and was a resident of California.

Dr. Zeichner admitted her for observation and antibiotic treatment. He also ordered CT scans of Mrs. Benjamin's abdomen and pelvis. The tests revealed no indication of the source of Mrs. Benjamin's pain. Dr. Zeichner continued to observe the patient, and determining she could not travel back to California in her present state, Dr. Zeichner elected to perform an exploratory abdominal laparotomy on August 29, 2000. According to Plaintiffs (Mrs. Benjamin's husband and children), while exploring the abdominal cavity, Dr. Zeichner manipulated Mrs. Benjamin's entire bowel by "running" it. Dr. Zeichner stated he took down multiple sigmoid adhesions and omental adhesions on the midline, and believed Mrs. Benjamin tolerated the surgery well.

According to the medical records, in the days following surgery, Mrs. Benjamin was running a fever. Dr. Zeichner consulted with Dr. Michelle Mayeaux, an internal medicine physician, to determine the source of the fever. Dr. Mayeaux was unable to determine the specific etiology of the fever. When the fever subsided, Mrs. Benjamin was discharged from the hospital. At discharge, which was three days after surgery, Mrs. Benjamin's temperature was 99 degrees.

She was advised to follow up with Dr. Zeichner and Dr. Mayeaux before returning to California.

Mrs. Benjamin returned to see Dr. Zeichner four days after discharge (seven days post-surgery). Dr. Zeichner noted her temperature was 98.8 degrees and she had no complaints. She was told to return for another follow-up visit, but she did not keep that appointment and returned home to California on September 8, 2000.

Upon her return to California, Mrs. Benjamin felt weak and tired. Her skin lost color, and she endured frequent bouts of vomiting. She was scheduled to see her internist the following week, but on September 10, 2000, Mrs. Benjamin had a mental status change and was obtunded. Emergency personnel were summoned, and she was taken to St. Francis Medical Center in Lynwood, California. She was immediately admitted into the Intensive Care Unit (ICU) of the hospital. Imaging studies confirmed she had a small bowel obstruction. She remained in ICU until she died on October 23, 2000.

Plaintiffs maintain the small bowel obstruction developed as a result of the surgery and manipulation of the bowel performed by Dr. Zeichner. They allege that had Mrs. Benjamin not developed the small bowel obstruction, which was a direct result of the manipulation of her bowel by Dr. Zeichner, she would not have died. Plaintiffs argued that surgery and manipulation of the bowel were not necessary to effectively treat Mrs. Benjamin. They also contend the surgical procedure performed by Dr. Zeichner was below the applicable standard of care.

In accordance with Louisiana law, the claim was initially presented to a Medical Review Panel, which unanimously found that Dr. Zeichner's treatment of Mrs. Benjamin did not deviate below the applicable standard of care. Following the decision by the Medical Review Panel, Plaintiffs filed this medical malpractice lawsuit against Dr. Zeichner.

In May of 2004, in response to a Motion for Summary Judgment filed by Dr.

3

Zeichner, Plaintiffs filed the expert affidavit of James Shamblin, M.D. At trial of the case in April, 2011, Plaintiffs sought to introduce the testimony of James Shamblin, M.D., and proffered him to the court as an expert witness in general surgery with specific expertise in bariatric surgery. Dr. Zeichner objected to allowing Dr. Shamblin to testify at the trial because he did not meet the mandatory requirements for expert medical witnesses as set forth in La.R.S. 9:2794(D)(1). The objections concerning the qualifications of Dr. Shamblin were raised in motions in limine. A hearing was held and evidence was taken concerning Dr. Shamblin's qualifications to be an expert witnesses.

It was established that Dr. Shamblin had given up his license to practice medicine in Louisiana in March 2007 and did not renew his license to practice medicine in Alabama effective December 31, 2010. Plaintiffs' counsel was aware of Dr. Shamblin's intention of surrendering his license to practice medicine. Because Dr. Shamblin was not licensed to practice medicine in any jurisdiction in the United States at the time of trial, La.R.S. 9:2794(D)(1)(d) requires that he be a graduate of "a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association."

There was no question that Dr. Shamblin was a 1958 graduate of Tulane Medical School; however, the trial court determined there was no competent evidence presented concerning the accreditation status of that school in 1958. Plaintiffs attempted to introduce a faxed letter from Tulane University which purported to establish Tulane Medical School's accreditation status. The trial court found the letter and accompanying attachments were inadmissible hearsay. Finding no evidence that Dr. Shamblin graduated from a properly accredited medical school, the trial court refused to qualify him as an expert witness.

4

At the conclusion of the hearing, counsel for Plaintiffs informed the trial court of their intent to seek supervisory relief from the ruling excluding Dr. Shamblin's testimony. Writs were taken to this Court, which were denied by a 2 to 1 vote, finding "[b]ased on the showing made, we find no error in the trial court's ruling." Plaintiffs then sought writs to the Louisiana Supreme Court. However, prior to the supreme court entertaining the writ, the trial court granted a directed verdict in favor of Defendant, dismissing Plaintiffs' malpractice claim. The Supreme Court then denied the writ, declaring it moot.

This appeal followed. Plaintiffs contend the trial court erred in prohibiting Dr. Shamblin from testifying as an expert in this case and in granting the directed verdict in favor of Defendant.

## ANALYSIS

Admissibility of expert testimony in Louisiana is governed by La.Code Evid. art. 702, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A district court has broad discretion in whether or not an expert's testimony is admissible and who should or should not be permitted to testify as an expert. *Cheairs v. State Dep't. of Transp.& Dev.*, 03-0680 (La. 12/3/03), 861 So.2d 536.

Louisiana Revised Statute 9:2794(D)(1) supplements La.Code Evid. art. 702 in the area of expert testimony in medical malpractice cases as it applies to the issue of a deviation from the standard of care applicable to a physician. It provides as follows:

> D. (1) In a medical malpractice action against a physician, licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., for injury to or death of a

5

patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:

(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.

(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.

(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.

(d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association.

Dr. Zeichner acknowledged subsection (a) was met because Dr. Shamblin was practicing medicine *at the time the claim arose*. Dr. Zeichner nevertheless objected to Dr. Shamblin's qualifications under subsections (b), (c), and (d) above. The trial court found Dr. Shamblin was not qualified to testify as to the standard of care of a general surgeon because Plaintiffs failed to prove under subsection (d) that Dr. Shamblin graduated from an accredited medical school.

Plaintiffs argue in brief that the purpose of La.R.S. 9:2794(D)(1), as it pertains to the qualifications of experts to testify on the issue of whether the physician departed from accepted standards of medical care, is to provide for competent medical testimony in litigation. They note, as evidence of his qualifications, Dr. Shamblin's extensive medical background, which included graduating from Tulane Medical School in 1958, passing his licensing test in 1959, applying and being accepted for a rotating internship at the University of Alabama, and then applying and being accepted for a fellowship/residency at the Mayo Clinic in Rochester, Minnesota. Plaintiffs also noted Dr. Shamblin was board certified in general surgery and for years had a full-time active practice in the field of general surgery.

6

Although we acknowledge Dr. Shamblin's medical background, we note that the trial court did not disqualify him on the basis that he did not meet the requirements of subsection (b) or (c) of La.R.S. 9:2794(D)(1). He was not allowed to testify solely because the trial court found he did not qualify under subsection (d), specifically that plaintiffs could not prove Tulane Medical School was accredited at the time of Dr. Shamblin's graduation. Thus, Dr. Shamblin's extensive medical resume is not relevant in this appeal.

Plaintiffs argue the evidence presented below was sufficient to establish Tulane Medical School's accreditation status in 1958. At the hearing, Plaintiffs attempted to introduce into evidence a letter from Tulane University to which was attached an email from an individual named Dan Hunt, which purported to contain information concerning Tulane's accreditation history. Mr. Hunt acknowledged he could not vouch with certainty for the accuracy of the information. The trial court also noted it could not determine the status of Tulane Medical School's accreditation status from the information provided. We agree that the submission set forth by Plaintiffs from Tulane is unclear as to its accreditation status. Thus, we do not find fault with the trial court on that issue.

Despite our finding that there is no conclusive evidence in the record of Tulane Medical School's accreditation status in 1958, we do not find that factor alone was sufficient to preclude Dr. Shamblin from testifying as an expert in this case. We find it significant that, although Dr. Shamblin had relinquished his medical licenses by the date of trial, he had begun reviewing the evidence in this case well before then and had formed his conclusions concerning Dr. Zeichner's alleged negligence well before he relinquished his medical licenses.

Of particular relevance in this case, is the fact that in 2004, Dr. Shamblin provided an affidavit wherein he asserted that Dr. Zeichner breached the standard of care in this case and that the breach caused the death of Mrs. Benjamin. This

affidavit was attached to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, and, thus, is part of the record. However, the trial court refused to allow it to be introduced at trial. At the time the affidavit was issued, Dr. Shamblin was licensed in both Alabama and Louisiana, and clearly qualified under La.R.S. 9:2794D(1)(d) to provide expert testimony. Thus, Dr. Shamblin was already actively involved in the proceedings of this case as an expert witness prior to surrendering his licenses. Therefore, many, if not all of the conclusions Dr. Shamblin reached concerning Dr. Zeichner's potential negligence in this case, came when he was clearly qualified under the statute as an expert witness. We find therefore, that to require Dr. Shamblin to maintain his licenses simply to testify in this case or to require Plaintiffs at this late date to retain another expert who would be unfamiliar with the case creates an unduly onerous burden, considering there was no question as to Dr. Shamblin's expert qualifications under La.R.S. 9:2794D(1)(d) when he rendered his previous affidavit. To retroactively determine Dr. Shamblin is not qualified under that subsection of the statute simply because he voluntarily relinquished his medical licenses is a hyper-technical reading of the statute which in no way furthers its intended purpose to provide competent expert witness testimony.

Further, subsection (d) does not specifically require that the prospective expert be licensed at the time of his testimony. Contrast that with subsection (a), which specifically states that the prospective expert be "practicing medicine at the *time such testimony is given* or was practicing medicine at the time the claim arose." (Emphasis added.) Thus, the failure of subsection (d) to contain a specific time period in its wording creates ambiguity. Arguably, if the legislature had intended to require that a prospective expert be licensed at the time testimony is given, it could have stated so as it did in subsection (a). Moreover, subsection (a) requires a prospective expert be "practicing medicine at the time such testimony is given *or*

8

was practicing medicine at the time the claim arose." (Emphasis added.) Thus, subsection (a) does not require a prospective expert to currently be practicing medicine to testify as an expert, but simply that he was practicing at the time the claim arose. It is reasonable to assume, considering the lack of a specific time period referenced in subsection (d), that a physician is qualified to testify as an expert if he was licensed at the time the claim arose. This interpretation would seem particularly reasonable, when, as here, the work product and conclusions reached by the prospective expert were first rendered when he still maintained his medical license.

Clearly, the intent behind the statute is to require that expert testimony be provided from qualified physicians. Considering the ambiguity in subsection (d), as noted above, and the fact that Dr. Shamblin began his expert work for Plaintiffs when he was still licensed in this state, we find the trial court erred in disqualifying him from testifying in this case.

Our ruling on this issue necessarily requires that we also reverse the trial court's grant of directed verdict which was premised on the absence of expert testimony by the plaintiff proving a breach of the applicable standard of care.

### DECREE

For the foregoing reasons, we reverse the judgment of the trial court disqualifying Dr. Shamblin from testifying as an expert. Consequently, we also reverse the grant of directed verdict in favor of Dr. Zeichner, as it was granted due to Plaintiffs' failure to present expert testimony in support of their case. The matter is remanded to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**