PER CURIAM *
| fin this medical malpractice case, the trial court refused to qualify Dr. James Shamblin as an expert witness for the plaintiffs, finding he did not satisfy the requirements for expert witnesses under the Medical Malpractice Act. The trial court subsequently granted defendant’s motion for directed verdict based on plaintiffs’ failure to present expert testimony to support their case. The court of appeal reversed these rulings. We granted this writ application to review the correctness of the court of appeal’s decision. For the following reasons, we reverse the ruling of the court of appeal, and reinstate the rulings of the trial court.
FACTS AND PROCEDURAL HISTORY
Plaintiffs, the husband and children of Margaret Benjamin, filed a medical malpractice claim against defendant, Dr. William Zeichner. Plaintiffs alleged that Dr. Zeichner performed a surgery on Mrs. Benjamin on August 29, 2000, which caused a small bowel obstruction and resulted in her death. Plaintiffs alleged that the surgery was not necessary to effectively treat Mrs. Benjamin, and further contended the surgical procedure performed by Dr. Zeichner was below the applicable standard of locare.
The claim was initially presented to a Medical Review Panel, which unanimously found that Dr. Zeichner’s treatment of Mrs. Benjamin did not deviate below the applicable standard of care. Following the decision by the Medical Review Panel, plaintiffs filed this medical malpractice lawsuit against Dr. Zeichner.
In May of 2004, in response to a motion for summary judgment filed by Dr. Zeich-ner, plaintiffs filed the expert affidavit of Dr. James Shamblin. However, the motion for summary judgment was never heard by the court. At trial of the case in April of 2011, plaintiffs sought to introduce *200 the testimony of Dr. Shamblin, and proffered him to the court as an expert witness in general surgery with specific expertise in bariatric surgery. Dr. Zeichner objected, arguing Dr. Shamblin did not meet the mandatory requirements for expert medical witnesses as set forth in La. R.S. 9:2794(D)( l).[1]
The objections concerning Dr. Sham-blin’s qualifications were raised in a motion in limine filed by plaintiffs. At the hearing on the motion, it was established | sthat Dr. Shamblin had given up his license to practice medicine in Louisiana in March of 2007 and did not renew his license to practice medicine in Alabama effective December 31, 2010. Plaintiffs’ counsel was aware of Dr. Shamblin’s intention of surrendering his Alabama license. Because Dr. Sham-blin was not licensed to practice medicine in any jurisdiction in the United States at the time of trial, defendant argued La. R.S. 9:2794(D)(l)(d) requires that he be a graduate of “a medical school accredited by the American Medical Association’s Liaison Committee on Medical Education (“LOME”) or the American Osteopathic Association.”
While there was no question Dr. Sham-blin was a 1958 graduate of Tulane Medical School, the trial court determined there was no competent evidence presented concerning the accreditation status of that school by the LOME in 1958. Plaintiffs attempted to introduce a faxed letter from Tulane University which purported to establish Tulane Medical School’s accreditation status, but the trial court found the letter and accompanying attachments were inadmissible hearsay. Finding no evidence that Dr. Shamblin graduated from a properly accredited medical school, the trial court refused to qualify him as an expert witness. While the trial was ongoing, plaintiffs filed a writ application with the court of appeal, which was denied, finding no error in the trial court’s ruling based on the showing made.[2] Plaintiffs then filed a writ application with this court. However, before this court considered the writ, the trial court granted defendant’s motion for directed verdict based on plaintiffs’ failure to present expert testimony to support their case. This court subsequently denied the writ as moot.[3]
Plaintiffs filed an appeal, contending the trial court erred in prohibiting Dr. Sham-blin from testifying as an expert in this case and in granting the directed verdict |4in favor of the defendant. The court of *201 appeal reversed the trial court’s rulings.[4] Although the court agreed there was no conclusive evidence in the record of Tulane Medical School’s accreditation status in 1958, it did not find that factor alone was sufficient to preclude Dr. Shamblin from testifying as an expert in this case. The court found it significant that, although Dr. Shamblin had relinquished his medical licenses by the date of trial, he had begun reviewing the evidence in this case well before then and had formed his conclusions concerning Dr. Zeichner’s alleged negligence before he relinquished his medical licenses. The court noted the record contained Dr. Shamblin’s affidavit from 2004 wherein he asserted that Dr. Zeich-ner breached the standard of care and that the breach caused the death of Mrs. Benjamin. At the time the affidavit was issued, the court noted Dr. Shamblin was licensed in both Alabama and Louisiana, and clearly qualified under La. R.S. 9:2794(D)(l)(d) to provide expert testimony. Thus, to require Dr. Shamblin to maintain his licenses simply to testify in this case or to require plaintiffs at this late date to retain another expert who would be unfamiliar with the case creates an unduly onerous burden, considering there was no question as to Dr. Shamblin’s expert qualifications under La. R.S. 9:2794(D)(l)(d) when he rendered his affidavit. The court reasoned that to retroactively determine Dr. Shamblin is not qualified under that subsection of the statute simply because he voluntarily relinquished his medical licenses is a hyper-technical reading of the statute which in no way furthers its intended purpose to provide competent expert witness testimony.
Moreover, the court found that subsection (d) does not specifically require that the prospective expert be licensed at the time of his testimony. The court compared it with subsection (a), which specifically states that the prospective expert be | /practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.” The court concluded that the failure of subsection (d) to contain a specific time period in its wording creates ambiguity. Thus, the court found it was reasonable to assume, considering the lack of a specific time period referenced in subsection (d), that a physician is qualified to testify as an expert if he was licensed at the time the claim arose. The court stated this interpretation was particularly reasonable, when, as here, the work product and conclusions reached by the prospective expert were first rendered when he still maintained his medical license.
Dr. Zeichner filed a writ application in this court, which we granted.[5]
DISCUSSION
The issue in this case involves the interpretation of La. R.S. 9:2794(D)(1). Thus, it is a question of law and reviewed by this court under a de novo standard of review.[6] After our review, we “render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state.”[7]
The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of *202 statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted, the Legislature to enact the law. The starting point in the interpretation of any statute is the language of the ^statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.[8] Further, the legislature is presumed to act with full knowledge of well-settled principles of statutory construction.[9] With these principles in mind, we examine the language of the statute.
La. R.S. 9:2794(D)(1) provides:
D. (1) In a medical malpractice action against a physician, licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:
(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.
(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.
(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.
(d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association’s Liaison Committee on Medical Education or the American Osteopathic | ./Association.
Dr. Zeichner argues the court of appeal erroneously interpreted the statute and rewrote subsection (D)(1)(d) to merely require that a physician be licensed to practice medicine at any time during the pen-dency of a medical malpractice action. That ruling ignores the clear and unambiguous language of the statute. The court of appeal’s interpretation completely ignores the legislative requirement that a physician “is” licensed to practice medicine at the time of his trial testimony. The clear language of the statute requires current licensure or graduation from an accredited medical school. Because plaintiffs did not prove Dr. Shamblin met the *203 clear requirements of the statute, the trial court properly excluded his testimony. And, because the other expert witnesses at trial unanimously testified that Dr. Zeichner did not breach the standard of care, the trial court correctly granted a directed verdict in favor of the defendant.
By contrast, plaintiffs argue the court of appeal correctly found the language in La. R.S. 9:2794(D)(l)(d) to be ambiguous. Plaintiffs have a duty to provide the standard of care of a healthcare provider at the time the malpractice was committed. Reading the statute as a whole, plaintiffs assert subsection (d) should be read to require the expert to be licensed at the time the claim arose or at the time the testimony is given.
Plaintiffs also argue that, for purposes of the statute, they provided adequate evi-dentiary proof that Tulane Medical School was accredited by the LOME in 1958. Relaxed rules of evidence should have been applied at the hearing to determine Dr. Shamblin’s qualifications, and plaintiffs proffered a letter from Tulane Medical School confirming that the school was accredited in 1958 when Dr. Shamblin graduated. Plaintiffs also suggest that Tulane’s accreditation can be assumed from the fact that Dr. Shamblin was licensed because the law requires that any person licensed |sto practice medicine in Louisiana must be a graduate of an accredited medical school.
After a de novo review of the record, and considering the law, arguments and briefs, we find the court of appeal erred in its interpretation of the statute. We find the words of La. R.S. 9:2794(D)(1) to be clear and unambiguous, thus we need look no further than the words of the statute itself in determining legislative intent.'
In a malpractice action based on the negligence of a physician, a plaintiff has the burden of proving the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana; that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and, that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.[10] To that end, the legislature has provided specific requirements for a person to be qualified to testify as an expert on the issue of whether the physician departed from accepted standards of medical care. These four mandatory requirements are set forth in La. R.S. 9:2794(D)(1).
Reading Section (D)(1) in a straight-forward manner, the statute provides that a physician may only qualify as an expert on the applicable standard of care in a medical malpractice action if: 1) he is practicing medicine when the testimony is given or was practicing medicine at the time of the claim; 2) he has knowledge of the standard of care; 3) he is qualified based on training and experience; 4) he is licensed to practice medicine or is a graduate of an accredited medical school. The dispute in this case involves interpretation of the fourth requirement, set forth in subsection (d). In subsection (d), the legislature’s use of the present-tense word “is” mandates | areading the statute to find that a person may qualify as an expert witness only if the person is a physician who is currently licensed to practice medicine or is a graduate of a medical school accredited by the LOME. Further, the word “qualify” in Section (D)(1) of the statute signifies the determination that one *204 is an expert must be made when that individual is presented for qualification as an expert. Thus, the meaningful time for a determination of whether Dr. Shamblin met the requirements of La. R.S. 9:2794(D)(1) was properly made at the time he was presented for qualification as an expert, i.e. at trial.
Contrary to the position taken by the plaintiffs and the reasoning of the court of appeal, we find no need to compare subsection (D)(1)(a) with subsection (D)(1)(d). While the legislature could have, as it did in (a), allowed for a witness to be qualified if he had been licensed to practice medicine at the time a claim arose, it did not. Instead, the legislature required current licensure or graduation from an accredited medical school. Differences in the two subsections do not create ambiguity in the statute.
Here, there is no dispute that Dr. Sham-blin was not licensed to practice medicine when the Plaintiffs sought to qualify him as an expert at trial. Thus, he could only qualify as an expert if he is a graduate of an accredited medical school. Both lower courts found that plaintiffs failed to establish Tulane Medical School was accredited by the LOME in 1958, when Dr. Shamblin graduated. We agree.
The qualification of an expert witness rests within the sound discretion of the trial judge, and his determination will not be disturbed absent manifest error.[11] In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-elearly wrong standard, which precludes the setting aside of a district |incourt’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.[12]
We find the trial court did not abuse its discretion in finding plaintiffs failed to prove Dr. Shamblin met the requirements of La. R.S. 9:2794(D)(1). We have reviewed the entire record, including the evidence proffered by plaintiffs relating to Tulane’s accreditation. Pretermit-ting discussion of whether such evidence was properly excluded as hearsay, we find the evidence does not conclusively establish that Tulane was “a medical school accredited by the American Medical Association’s Liaison Committee on Medical Education or the American Osteopathic Association” in 1958. We also cannot assume accreditation based solely on the fact that Dr. Shamblin received a license to practice medicine in Louisiana in 1959. Plaintiffs rely on former La. R.S. 37:1271, which provided for qualifications to practice medicine. One such requirement was that the person “present to the board a diploma from a college in good standing of any sect teaching medicine or the healing art.” La. R.S. 9:2794(D)(1) requires that plaintiffs prove Tulane was accredited by the LOME in 1958. We do not find satisfaction of former La. R.S. 37:1271 equates to satisfaction of La. R.S. 9:2794(D)(l)(d).
Given the facts of this case, the court of appeal’s desire to prevent Dr. Shamblin from having to maintain his license simply to testify, or to prevent plaintiffs from having to retain a new expert, is misplaced and does not justify its erroneous interpretation of the statutory provisions. The record reflects that Dr. Shamblin advised plaintiffs’ counsel of his intention to not renew his Alabama medical licensing effective December 31, 2010. Plaintiffs had several months prior to trial in April of *205 2011 to either request that Dr. Shamblin maintain his licensing through the |1T trial of this matter or to acquire conclusive evidence from Tulane or the LCME establishing the accreditation status of Tulane Medical School in 1958.
CONCLUSION
For the above reasons, we find the court of appeal erred in its interpretation and application of La. R.S. 9:2794(D)(1). Applying the words of the statute as written, we find that Dr. Shamblin did not meet the mandatory requirements for an expert witness pursuant to La. R.S. 9:2794(D)(1). Dr. Shamblin was not licensed to practice medicine at the time he was to be qualified as an expert, and plaintiffs failed to prove Tulane Medical School was accredited by the LCME when Dr. Shamblin graduated in 1958. Thus, the trial court correctly excluded him as a witness. Finding no expert evidence that defendant breached the standard of care, the trial court properly granted a directed verdict in favor of Dr. Zeichner.
DECREE
REVERSED. RULINGS OF THE TRIAL COURT REINSTATED.
Judge JEFFERSON D. HUGHES III was assigned as Justice pro tempore sitting for KIMBALL, C.J. for oral argument, and sits as an elected Justice at the time this opinion is rendered.
JOHNSON, Chief Justice, concurs in part, dissents in part and assigns reasons.

 Judge Jefferson D. Hughes III was assigned as Justice pro tempore sitting for Kimball, C.J. for oral argument, and sits as an elected Justice at the time this opinion is rendered.

.La. R.S. 9:2794(D)(1) provides:
In a medical malpractice action against a physician, licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., for injury to or death of a patient, a person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of medical care only if the person is a physician who meets all of the following criteria:
(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.
(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim.
(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.
(d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association.

. Williams v. Zeichner, 11-00447 (La.App. 3 Cir. 4/13/11) (unpublished).

. Benjamin v. Zeichner, 11-0751 (La.4/18/11), 62 So.3d 65.

. Benjamin v. Zeichner, 11-1524 (La.App. 3 Cir. 6/27/12), 94 So.3d 1005.

. Benjamin v. Zeichner, 12-1763 (La. 11/21/12), 102 So.3d 49.

. Broussard v. Hilcorp Energy Co., 09-0449 (La. 10/20/09), 24 So.3d 813, 816.

. Id.

. Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development, 10-0193 (La. 1/19/11), 56 So.3d 181, 187 (citing M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La.7/1/08), 998 So.2d 16, 27).

. State v. Bedford, 01-2298 (La.1/28/03), 838 So.2d 758, 760; Sultana Corp. v. Jewelers Mut. Ins. Co., 03-0360 (La. 12/3/03) 860 So.2d 1112, 1119.

. La. R.S. 9:2794(A).

. Rando v. Anco Insulations, Inc., 08-1163 (La.5/22/09), 16 So.3d 1065, 1087; Hunter v. Bossier Medical Center, 31,026 (La.App. 2 Cir. 9/25/98), 718 So.2d 636, 644.

. Cenac v. Public Access Water Rights Ass’n, 02-2660 (La.6/27/03), 851 So.2d 1006, 1023.