# IN THE SUPREME COURT OF IOWA

No. 22–1572

Submitted November 15, 2023—Filed December 22, 2023

**RENEE HUMMEL,**

　　Appellee,

vs.

**ADAM B. SMITH, ADAM SMITH, M.D., P.C.,** and **TRI-STATE SPECIALISTS, L.L.P.,**

　　Appellants.

---

Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer, Judge.

The defendants in a medical malpractice case seek interlocutory review of an order denying their motion to strike and for summary judgment because the expert who signed the plaintiff's certificate of merit did not have an active license to practice medicine. **REVERSED AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, McDonald, and Oxley, JJ., joined, and in which McDermott and May, JJ., joined in part. McDermott, J., filed a special concurrence, in which May, J., joined.

Jeff W. Wright and Zack A. Martin of Heidman Law Firm, P.L.L.C., Sioux City, for appellants.

Jon Specht of Trial Lawyers for Justice, Decorah, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

To establish a prima facie case of medical malpractice, the plaintiff must ordinarily provide expert testimony that the defendant breached the relevant standard of care. *See Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990). In such a case, the plaintiff must submit a certificate of merit affidavit signed by an expert witness within sixty days of the defendant's answer. Iowa Code § 147.140(1)(*a*) (2020). Failure to substantially comply with this requirement will lead, upon motion, to dismissal of the case with prejudice. *Id.* § 147.140(6). Iowa law also requires that an expert witness on standard of care or its breach be "licensed to practice in the same or a substantially similar field as the defendant." *Id.* § 147.139(1).

In this medical malpractice case, the plaintiff submitted a certificate of merit signed by a physician who had practiced in the same field—plastic surgery—as the defendant. But due to his retirement, the physician's active practice licenses had expired and become inactive, meaning that he was no longer able to practice medicine. The defendants moved to strike the expert and for summary judgment on this ground. After the district court denied the defendants' motion, we granted their application for an interlocutory appeal.

We now conclude that the "licensed to practice" language in the statute requires the expert to have an active license that allows the actual practice of medicine; an inactive license does not meet this requirement. Therefore, we reverse the district court's ruling and remand for entry of judgment in favor of the defendants.

### II. Background Facts and Proceedings.

On March 23, 2020, Renee Hummel sued Dr. Adam Smith and entities that employed him for injuries she sustained as a result of a 2018 breast

reduction surgery.[1] Hummel's petition alleged negligence, breach of warranty, and failure to obtain informed consent. On June 15, pursuant to Iowa Code section 147.140, Hummel submitted a certificate of merit affidavit signed by Richard Marfuggi, M.D. Dr. Marfuggi's affidavit stated that Smith had breached the standard of care with respect to Hummel's surgery and follow-up care. The affidavit also stated that Dr. Marfuggi had actively performed plastic surgery and postsurgical care in the five years leading up to April 26, 2018, the date of Hummel's surgical procedure.

However, Dr. Marfuggi acknowledged in the affidavit that he had retired from clinical practice on July 1, 2019. As it turned out, by the time Dr. Marfuggi signed the affidavit, both his New York and New Jersey licenses had become "inactive" or "retired," meaning that he was no longer authorized to practice medicine in either state.

Later, Hummel designated Dr. Marfuggi as an expert witness for purposes of Iowa Code section 668.11. In an expert report, Dr. Marfuggi explained in greater detail the ways in which he believed Dr. Smith had breached the applicable standard of care.

On April 25, 2022, Dr. Smith moved to strike Dr. Marfuggi as an expert witness and moved for summary judgment. Dr. Smith contended that the case should be dismissed because Dr. Marfuggi had not met the expert witness requirements of Iowa Code section 147.139(1). *See* Iowa Code § 147.140(1)(*a*) (stating that the expert witness for a certificate of merit affidavit "must meet the qualifying standards of section 147.139"). Section 147.139(1) requires—among other things—that a person serving as an expert witness in a medical malpractice

---

[1]For the sake of simplicity, we will refer to the defendants collectively as "Dr. Smith."

case be "licensed to practice in the same or a substantially similar field as the defendant." *Id.* § 147.139(1).

Hummel resisted Dr. Smith's motion. She later supplemented her resistance with a sworn declaration from Dr. Marfuggi stating that he was eligible to restore his New Jersey license to "active" status and was in the process of doing so.

Following a hearing, the district court denied Dr. Smith's motions. The court reasoned that Dr. Marfuggi's status as "licensed" in New Jersey and New York was sufficient for purposes of Iowa Code section 147.139(1). It noted that Iowa Code section 147.139(1) only requires the expert to be "licensed to practice," while in the very next subsection, the statute requires that the expert have "actively practiced" within the five years preceding the alleged negligence. *See id.* § 147.139(2). In the district court's view, this contrast in wording meant that a "license to practice" need not be "active," and it held that Dr. Marfuggi's inactive and retired licenses satisfied the statutory requirements for in section 147.139(1) for an expert witness.

Dr. Smith filed a timely application for an interlocutory appeal. We granted the application and stayed district court proceedings. We retained the appeal.

**III. Standard of Review.**

The issue is one of statutory interpretation. "Our review is . . . for correction of errors at law." *State v. Ness*, 907 N.W.2d 484, 487 (Iowa 2018) (quoting *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003)).

**IV. Analysis.**

In 2017, the Iowa legislature amended Iowa Code section 147.139 relating to expert witness standards. *See* 2017 Iowa Acts ch. 107 §, 3 (codified at Iowa Code § 147.139 (2018)). Previously, Iowa law simply required that the standard-of-care expert's "medical or dental qualifications relate directly to the

medical problem or problems at issue and the type of treatment administered in the case." Iowa Code § 147.139 (2016). The 2017 legislation established more elaborate standards, as follows:

> If the standard of care given by a health care provider, as defined in section 147.136A, is at issue, the court shall only allow a person the plaintiff designates as an expert witness to qualify as an expert witness and to testify on the issue of the appropriate standard of care or breach of the standard of care if all of the following are established by the evidence:
>
> 1. The person is licensed to practice in the same or a substantially similar field as the defendant, is in good standing in each state of licensure, and in the five years preceding the act or omission alleged to be negligent, has not had a license in any state revoked or suspended.
>
> 2. In the five years preceding the act or omission alleged to be negligent, the person actively practiced in the same or a substantially similar field as the defendant or was a qualified instructor at an accredited university in the same field as the defendant.
>
> 3. If the defendant is board-certified in a specialty, the person is certified in the same or a substantially similar specialty by a board recognized by the American board of medical specialties or the American osteopathic association.
>
> 4. If the defendant is a licensed physician or osteopathic physician under chapter 148, the person is a physician or osteopathic physician licensed in this state or another state.

*Id.* § 147.139 (2018). With some additions that are not material to this case, those 2017 changes remain in place for standard-of-care experts today. *See id.* § 147.139 (2023).

No one disputes that Dr. Marfuggi was "licensed" in New York and New Jersey when he signed the certificate of merit affidavit and his expert report for this case in 2020. Under New York law, a physician's license "shall be valid during the life of the holder unless revoked, annulled or suspended." N.Y. Educ. Law § 6502(1) (McKinney 2020). However, Dr. Marfuggi had transitioned to an

"inactive license" in New York when he retired as of July 1, 2019. As the New York State Education Department website explains, a medical professional—including a physician—must have their license "registered" if they wish to practice. *General Information & Policies*, N.Y. State Educ. Dep't [hereinafter *N.Y. General Information & Policies*], https://www.op.nysed.gov/about/general-information-policies [https://perma.cc/4AVX-DEVF]. Registration requires, among other things, the payment of a fee and completion of continuing education. *License Requirements for Physicians*, N.Y. State Educ. Dep't, https://www.op.nysed.gov/professions/physicians/license-requirements [https://perma.cc/5QAU-C4QJ]. A physician's registration is good for two years and must be renewed. *N.Y. General Information & Policies*. If the physician is not practicing, they may place their registration on inactive status free of charge. *Online Registration Renewal*, N.Y. State Educ. Dep't, https://www.op.nysed.gov/registration-renewal/online-registration-renewal [https://perma.cc/RG8S-YJR5] (select the underlined text titled "How to Request Inactive Status Online").

Likewise, Dr. Marfuggi had become a "retired" licensee upon his 2019 retirement in New Jersey. New Jersey recognizes the status of a "retired" licensee who is licensed but not authorized to practice medicine. *See* N.J. Stat. Ann. § 45:9-6.1 (West 2020) ("The certificate of registration which shall be issued to a retired physician shall state, among other things, that the holder has been licensed to practice in New Jersey, but that during his retirement he shall not so practice.").

Iowa also has a category of physicians who are licensed but inactive and ineligible to practice. Under Iowa law, "[a] physician whose license is inactive continues to hold the privilege of licensure in Iowa but may not practice medicine under an Iowa license until the license is reinstated to current, active status." Iowa Admin. Code r. 653–9.14(1)(*c*). "A licensee whose license is inactive or

lapsed shall not engage in the practice of the profession until the license is reactivated or reinstated." Iowa Code § 147.10(2) (2020); *see also* Iowa Admin. Code r. 653–9.1 (" '*Current, active status*' means a license that is in effect and grants the privilege of practicing . . . medicine and surgery . . . .").

Clearly, Dr. Marfuggi would have qualified as a standard-of-care expert if he had signed the certificate of merit affidavit and the expert report in 2018, before his retirement. The fighting issue in this case is whether Dr. Marfuggi was "licensed to practice" in 2020, notwithstanding his retirement and the inactive and retired status of his licenses.

"When interpreting the meaning of a statute, we start with the statute's text." *Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 904 (Iowa 2021). "If statutory language in its proper context is unambiguous, we do not look past the plain meaning of the words." *Id.*

As we have explained,

> "A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." We have said that "[a]mbiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes." In other words, even if the meaning of words might seem clear on their face, their context can create ambiguity.

> That is because we read statutes as a whole rather than looking at words and phrases in isolation.

*Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015) (alteration in original) (quoting *Mall Real Est., L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 198 (Iowa 2012)).

Section 147.139 imposes several requirements. The expert must be currently "licensed to practice in the same or a substantially similar field as the defendant." Iowa Code § 147.139(1). The expert must have "actively practiced"

(or have been a qualified instructor) during the five years prior to the act or omission in question. *Id.* § 147.139(2). And if the defendant is a licensed physician, the expert must also be "licensed" in a state. *Id.* § 147.139(4)(*a*).

Hummel argues that "licensed to practice" means nothing more than "licensed." She maintains that if the legislature wanted to impose an active practice requirement, it would have said so. She emphasizes that the entire phrase reads "licensed to practice in the same or a substantially similar field as the defendant," and that the point of the word "practice" is simply to assure that the expert has been engaged in the same field as the defendant. *Id.* § 147.139(1). Dr. Smith, on the other hand, insists that Hummel's interpretation "effectively reads 'to practice' out of the statute."

On our first pass, we find that the term "licensed to practice" is ambiguous. The text seems to favor Dr. Smith. It is framed in the present tense—"is licensed to practice"—and the undisputed facts are that Dr. Marfuggi could not legally practice medicine when he signed the certificate of merit affidavit and the expert report. He was licensed but not licensed to practice.

Yet reasonable minds could differ. Reading the statute as a whole, it is plausible that "to practice" should be coupled primarily with "in the same or a substantially similar field as the defendant" and that the effect of the phrase is to require that the expert possess a license covering the same or a substantially similar field as the defendant, whether active or not. This is seemingly bolstered by the separate requirement imposed by section 147.139(2) that in the five years preceding the act or omission alleged to be negligent, the expert must have "actively practiced in the same or a substantially similar field as the defendant or was a qualified instructor at an accredited university in the same field as the defendant." *Id.* § 147.139(2). In Hummel's view, section 147.139(2) addresses the extent to which the expert must be—or must have been—active, and section

147.139(1) addresses whether or not the expert has a license and is in good standing. Given this ambiguity, we will also consult other tools of statutory interpretation. *See State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017).

One tool is the presumption against superfluous words. *See Iowa Ins. Inst.*, 867 N.W.2d at 75; *see also* Iowa Code § 4.4(2) (setting forth the presumption that "[t]he entire statute is intended to be effective"). Under Hummel's proposed interpretation, the first sentence of section 147.139(1) could omit the phrase "to practice" and still convey the same meaning. If we want to give separate meaning to the phrase "to practice," we need to read that phrase as requiring the expert to possess a license that actually authorizes *practice*.

Hummel argues that Dr. Smith's interpretation also leads to extra words. That is, it creates a redundancy between the first sentence of section 147.139(1), which requires that the expert be presently licensed to practice in the same or a similar field as the defendant, and section 147.139(2), which requires that the expert have actively practiced or taught in the same or a similar field as the defendant during the five years preceding the alleged act or omission. But that isn't quite so. For one thing, the timeframes are different: section 147.139(1) focuses on the time when the expert is performing a specific role in the case; section 147.139(2) focuses on the five years preceding the act or omission. In addition, Hummel overlooks that an expert could have a license that authorizes practice without actually being engaged in practice or teaching; that would still satisfy section 147.139(1) as interpreted by Dr. Smith.

We also interpret statutes to favor reasonable results. *See Iowa Ins. Inst.*, 867 N.W.2d at 75; *see also* Iowa Code § 4.4(3) (setting forth a presumption that "[i]n enacting a statute . . . [a] just and reasonable result is intended"); *id.* § 4.6(5) (indicating that when a statute is ambiguous, we may consider "[t]he consequences of a particular construction"). One could argue that it shouldn't

matter whether an expert holds a current, active license so long as the expert is actively engaged in the same field of medicine at the time of the act or omission and is still technically licensed and in good standing. Who cares about anything else? Still, the legislature might have concluded that there is a benefit to requiring experts in medical malpractice cases not to be retired or inactive. An expert with a license authorizing the practice of medicine has an ongoing role in the medical field and, in the legislature's view, might be more careful in passing judgment on another healthcare provider.

Another relevant interpretive consideration is what the phrase "license to practice" means when used elsewhere in the Iowa Code. *See State v. Richardson*, 890 N.W.2d 609, 618 (Iowa 2017) ("One possible tool is to examine how the phrase . . . is used elsewhere in the Iowa Code."). Generally, the phrase means that the person has the present legal ability to practice in the field. In fact, chapter 147 frequently uses "license" and "license to practice" interchangeably, such that the word "license" when used alone means an *active* license. Consider the following instances where "license" in isolation refers to an active license: Iowa Code section 147.2(1) provides that a person shall not practice medicine without a "license for that purpose," and section 147.7(1) provides that a board "may require every person licensed by the board to display the license and evidence of current renewal publicly in a manner prescribed by the board."

By contrast, chapter 147 equates an "inactive license" with a "lapsed" license that needs to be reactivated before it can be used. Iowa Code section 147.10(1) provides, "Every license to practice a profession shall expire in multiyear intervals and be renewed as determined by the board upon application by the licensee." Iowa Code section 147.10(2) goes on: "Failure of a licensee to renew a license within the grace period shall cause the license to become inactive or lapsed. A licensee whose license is inactive or lapsed shall not engage in the

practice of the profession until the license is reactivated or reinstated." *See also id.* § 147.11(1) ("A licensee who allows the license to become inactive or lapsed by failing to renew the license, as provided in section 147.10, may reactivate the license upon payment of a reactivation fee and compliance with other terms established by board rule."); Iowa Admin. Code r. 653–9.14(1)(*a*) (" 'Inactive status' may include licenses formerly known as delinquent, lapsed, or retired."). Someone whose license has become inactive is, in the eyes of the foregoing provisions of Iowa law, licensed in name but not substance.

Iowa Code section 147.49 states, "A board shall, upon presentation of a license to practice a profession issued by the duly constituted authority of another state with which this state has established reciprocal relations . . . license the applicant to practice in this state." In this context, "license to practice" clearly means an active license. Were the phrase "license to practice" to be read to include inactive and retired licenses, the Iowa Board of Medicine would be compelled to grant licensure to physicians from reciprocal states who had long ceased practicing medicine and whose licenses had lapsed many years ago.

We may also consider legislative history. Iowa law provides that in interpreting an ambiguous statute, we may consider "[t]he circumstances under which the statute was enacted" and "[t]he legislative history." *Id.* § 4.6(2)–(3); *see also Iowa Ins. Inst.*, 867 N.W.2d at 76. The bill explanation for the 2017 legislation states,

> The bill provides standards for an expert witness in a medical malpractice case. The bill provides that a person is only qualified to serve as an expert witness in a medical malpractice case if the person is a licensed health care provider, is in good standing in each state of licensure, and in the five years preceding the act or omission alleged to be negligent, has not had a license in any state revoked or suspended . . . .

H.F. 487, 87th G.A., 1st Sess., explanation (Iowa 2017). This summary of the legislation indicates that a person can serve as an expert if the person is "a licensed health care provider." It does not indicate that the license must be active or that it must authorize practice. We have relied on bill explanations in the past as interpretive aids, noting that the internal rules governing the general assembly require such explanations to be accurate. *See Iowa Ins. Inst.,* 867 N.W.2d at 76; *Star Equip., Ltd. v. State,* 843 N.W.2d 446, 454 (Iowa 2014). But we have declined to follow such explanations when they are inconsistent with the text of the legislation. *Borst Bros. Const., Inc. v. Fin. of Am. Com., LLC,* 975 N.W.2d 690, 701–02 (Iowa 2022).

While the matter is not free from doubt, when we weigh all of these considerations together, we conclude that "license to practice" as used in section 147.139(1) requires that the expert currently possess a license that authorizes practice. That is the more logical reading of the actual text. It is not logical to say that "to practice" modifies the language that follows it but not the language that precedes it. Rather, we are dealing with an infinitive that connects *both.* The physician has a license. What kind of license? A license to practice in the same or substantially similar field as the defendant.

Also, Dr. Smith's interpretation is more consistent with how terms like "license" and "license to practice" are used elsewhere in chapter 147. And we avoid redundancy if we conclude that the term "to practice" was included in section 147.139(1) to avoid the implication that other forms of licensure, such as inactive or retired status, would be enough.

While our interpretation of this 2017 statutory revision is a matter of first impression, it is not made in a vacuum. Several of our sister states with similar statutes concerning expert testimony have come to the same conclusion.

Louisiana law requires that experts testifying in a medical malpractice case must be "licensed to practice medicine" in Louisiana or any other state or be "a graduate of a medical school accredited by the American Medical Association's Liaison Committee on Medical Education or the American Osteopathic Association." La. Stat. Ann. § 9:2794(D)(1)(d) (2020). In the case of *Benjamin v. Zeichner*, the plaintiffs relied on the testimony of a doctor whose license had become inactive. *See* 113 So. 3d 197, 204 (La 2013) (per curiam). When analyzing "the legislative requirement that a physician 'is' licensed to practice medicine at the time of his trial testimony," the Louisiana Supreme Court concluded that "[t]he clear language of the statute requires current licensure." *Id.* at 202. Because the doctor's inactive license was not a license to practice and there was no indication he had attended a school accredited by the appropriate association, the Louisiana Supreme Court affirmed the district court's decision to grant a directed verdict for failure to establish a prima facie case of medical malpractice. *Id.* at 203–04.

Similarly, Ohio law requires that physicians testifying in medical malpractice claims be "licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state." Ohio Evid. R. 601(B)(5)(*a*). In the case of *May v. Donich Neurosurgery & Spine, L.L.C.*, the plaintiffs offered opinions from a physician whose license had expired about four months prior to signing an affidavit of merit for the case. No. 29215, 2019 WL 5212591, at *1 (Ohio Ct. App. Oct. 16, 2019). The defendants moved to strike the expert and dismiss the case. *Id.* Despite the plaintiffs' explanation that the expert was attempting to renew his license at that time, the court affirmed the decision to strike the expert's testimony and dismiss the case because at the time of signing

the affidavit, the physician had not been licensed to practice and therefore could not be admitted as an expert. *Id.* at *5.

In Pennsylvania, an expert delivering medical testimony concerning standard of care must "[p]ossess an unrestricted physician's license to practice medicine in any state or the District of Columbia." 40 Pa. Stat. and Cons. Stat. § 1303.512(*b*)(1) (West 2020). In the case of *Bethea v. Philadelphia AFL-CIO Hospital Association*, the plaintiff proposed as her expert a retired general surgeon whose medical license had expired three years prior to the preparation of his expert report. 871 A.2d 223, 225 (Pa. 2005). The court found that his expired license was not a license to practice as required by statute and affirmed the dismissal of the plaintiff's claim. *Id.* at 226–27.

Thus, our conclusion that Iowa law requires medical malpractice experts to possess active licenses would not put us on an island. For all the reasons stated—including statutory text, rules of interpretation, and the views of other states—we conclude that a qualified expert under Iowa Code section 147.139 must possess a current active license to practice.

We now turn to Hummel's alternative argument that she substantially complied with the relevant statutory requirements. *See* Iowa Code § 147.140(6) (requiring dismissal on motion when the plaintiff fails to "substantially comply" with the certificate of merit affidavit requirement); *Hantsbarger v. Coffin*, 501 N.W.2d 501, 504 (Iowa 1993) (en banc) (recognizing a substantial compliance exception to the requirements of section 668.11). "Substantial compliance means 'compliance in respect to essential matters necessary to assure the reasonable objectives of the statute.' " *McHugh v. Smith*, 966 N.W.2d 285, 288–89 (Iowa Ct. App. 2021) (quoting *Hantsbarger*, 501 N.W.2d at 504). Having concluded that the statute requires experts to be currently licensed to practice, we do not believe that an affidavit from a physician who retired in 2019

and took inactive or retired status at that time amounts to substantial compliance.

Because Dr. Marfuggi did not have a license to practice medicine when he signed the certificate of merit affidavit or the expert report, we reverse and remand with directions that judgment be entered in favor of the defendants.

**V. Conclusion.**

For the foregoing reasons, we reverse the district court's order and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

Christensen, C.J., and Waterman, McDonald, and Oxley, JJ., join this opinion, and McDermott, and May, JJ., join in part. McDermott, J., files an opinion concurring specially, in which May, J., joins.

**McDermott, Justice (concurring specially).**

I join today's opinion except for the part that ventures into legislative history. The majority correctly construes the statute's use of "license to practice" in Iowa Code § 147.139(1) as requiring that the expert currently possess a license that authorizes practice in the defendant's field. But while applying valid canons of statutory construction on its analytical path, the majority takes an ill-advised detour to evaluate the legislative history of the statute, citing the "bill explanation" that initially accompanied the legislation. This digression into the legislative history is unnecessary and, in fact, undermines the majority's otherwise rigorous textual analysis.

"The law *is* what the law *says* . . . ." *Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 279 (1996) (Scalia, J., concurring in part and concurring in the judgment). The law is not the statements or beliefs or explanations of particular legislators or legislative staff. We must apply statutes "as written, not by what the legislature might have said or intended." *State v. Macke,* 933 N.W.2d 226, 233 (Iowa 2019). The text's meaning "is to be found not in the subjective, multiple mind of Congress but in the understanding of the objectively reasonable person." Frank H. Easterbrook, *The Role of Original Intent in Statutory Construction,* 11 Harv. J.L. & Pub. Pol'y 59, 65 (1988).

Reliance on legislative history is built on the flawed premise that when construing statutes we are looking for the intent of the legislature rather than the meaning of a statute's text. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 375 (2012) [hereinafter Scalia & Garner]. But legislative bodies do not possess some freestanding "intent" that courts can divine. For this reason, "[w]e do not inquire what the legislature meant; we ask only what the statute means." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341

U.S. 384, 396–97 (1951) (Jackson, J., concurring) (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation, in Collected Legal Papers* 203, 207 (1920)).

A broad body of legal canons has formed around how courts should interpret statutory text. *See generally* Scalia & Garner (detailing numerous canons of statutory interpretation). But no similar canons exist for all the different legislative histories one might find. "Since there are no rules as to how much weight an element of legislative history is entitled to, it can usually be either relied upon or dismissed with equal plausibility." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 35–36 (1997). Proper constraints on judicial decision-making that derive from the text—constraints consistent with, if not critical to, the nature of our democratic system—come undone when we resort to legislative history as an interpretive tool.

In Iowa, a bill must pass both the senate and house of representatives and be signed by the Governor to become law. Iowa Const. art. III, §§ 15–16. The preamble and bill explanation are attached at the beginning and end of a bill when introduced, but neither part is voted on, and neither becomes part of our codified law. *See, e.g.*, *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 454 n.3 (Iowa 2014) ("The legislature enacts the bill—not the accompanying explanation.")

Ours is a system of written laws, and people can readily understand that they will be bound by a law's actual text. But people have no way of knowing that they might also be bound by explanatory passages that a sponsoring legislator includes when the bill is introduced in the legislature or bound by some individual legislator's statements uttered in the course of debate on a bill. And, with any particular piece of legislative history, people "would not know any way of anticipating what would impress enough members of the Court to be controlling" in any event. *Schwegmann Bros.*, 341 U.S. at 396 (Jackson, J.,

concurring). Our interpretation should be based on what the text says and fairly implies without resorting to legislative history, which neither controls nor clarifies the law's meaning.

May, J., joins this special concurrence.