# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **17th day of November, 2023** are as follows:

**BY Griffin, J.:**

2023-C-00182    CHARLIE CALDWELL JR., SHREVEPORT CITY MARSHAL AND THE SHREVEPORT CITY MARSHAL'S OFFICE VS. THE CITY OF SHREVEPORT (Parish of Caddo)

REVERSED AND RENDERED. SEE OPINION.

Hughes, J., dissents and assigns reasons.
Crichton, J., additionally concurs and assigns reasons.
Crain, J., concurs and assigns reasons.
McCallum, J., additionally concurs.

**CHARLIE CALDWELL JR., SHREVEPORT CITY MARSHAL AND THE SHREVEPORT CITY MARSHAL'S OFFICE**

**VS.**

**THE CITY OF SHREVEPORT**

*On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Caddo*

**GRIFFIN, J.**

We granted this writ to clarify the statutory funding obligations of the City of Shreveport ("the City") to the Shreveport City Marshal ("the Marshal"). Based on the plain language of the relevant statutory provisions, we find La. R.S. 13:1889 requires only that the City fund the operation and maintenance expenses of the physical offices of the Marshal.

## FACTS AND PROCEDURAL HISTORY

The Marshal filed a petition for a writ of mandamus or, alternatively, damages arguing that, for over a decade, the City has failed to satisfy its obligation to fund all reasonable and necessary expenses of the Marshal's office.[1] The Marshal further avers the City has only provided housekeeping and limited maintenance services; paid for the utilities for the court building where the Marshal's office is located;[2] and paid the salaries of the Marshal and his deputies. To partially cover the alleged deficit, the Marshal made use of an account provided for under La. R.S. 13:1899(C) and funded by revenues generated by additional costs assessed in city court criminal matters.

---

[1] The Marshal originally sought damages from 2008 through 2020; however, the trial court granted an exception of prescription and all claims prior to 2010 were dismissed.

[2] Testimony adduced at trial established the City provides these services to the Marshal through Shreveport Public Assembly & Recreation ("SPAR") rather than budgetary allocations.

The trial court ruled that, under La. R.S. 13:1889, the City owes the Marshal expenses of operation and maintenance.[3] Specifically, the trial court determined that the Marshal had "unfunded expenses" in the total amount of $8,854,670.92 over the relevant time period. From this amount, the trial court made a series of deductions. It deducted $23,109.00 as expenses deemed unreasonable by the Marshal's auditor. It deducted $3,676,414.08 for the vehicle expenses noting that the City is only statutorily required to pay for and maintain one vehicle for the Marshal. *See* La. R.S. 13:2084. Further, it deducted $567,574.99 for expenses associated with the Peabody Building (a training facility for new deputies) for which the City was not contractually responsible. Finally, the trial court deducted $3,060,201.27 in funds received under La. R.S. 13:1899(C) which are required to be used for defrayment of operational and equipment expenses ("Defrayment Funds"). Thus, after deductions, the trial court awarded a total amount of $1,527,371.58.

The Marshal appealed arguing the trial court erred in allocating his Defrayment Funds as a payment of the City's obligation to fund the Marshal's operation and maintenance expenses. The court of appeal agreed, reversed the trial court, and increased the judgment by the amount of the Defrayment Funds to a

---

[3] In its written reasons, the trial court cited a series of attorney general opinions rendered in response to prior requests of the Marshal to clarify the City's funding obligations under La. R.S. 13:1889. Notably, the attorney general's "office has continually recognized that the city is primarily responsible for all obligations incurred by the city court and city marshal's office for its operating expenses with the sole proviso that such obligations are 'reasonable and necessary.'" La. Atty. Gen. Op. No. 17-0004 (10/19/17), 2017 WL 4986214; *see also* La. Atty. Gen. Op. No. 10-0180 (9/3/10), 2010 WL 4149386 ("[i]t is the opinion of [the attorney general's] office that the use of the word 'shall' in La. R.S. 13:1889 means the City of Shreveport has a mandatory duty to provide suitable offices for the marshal, and to fund the operational expenses of the office").

As will be discussed later in this opinion, we disagree with this interpretation to the extent it requires the City to fund "operational expenses" beyond providing and maintaining the physical offices occupied by the Marshal. *See Dunn v. City of Kenner*, 15-1175, p. 15 n. 14 (La. 1/27/16), 187 So.3d 404, 415 n. 14 (attorney general opinions are merely advisory and not binding on courts).

total of $4,587,572.85. *Caldwell v. City of Shreveport*, 54,770, pp. 10-11 (La.App. 2 Cir. 11/16/22), 352 So.3d 108, 112-113.

The City's writ application to this Court followed, which we granted. *Caldwell v. City of Shreveport*, 23-0182 (La. 4/25/23), 359 So.3d 966.

## DISCUSSION

The issue before this Court is the extent to which the City is statutorily obligated to fund the operation of the Marshal's office. Statutory interpretation is a question of law subject to *de novo* review. *Benjamin v. Zeichner*, 12-1763, p. 5 (La. 4/5/13), 113 So.3d 197, 201.

### NO CAUSE OF ACTION

At oral argument this Court raised the issue of whether a cause of action may properly exist to retroactively recover, beyond the fiscal year claimed to be inadequately funded, for budgetary allocations allegedly owed by the City. *See* La. C.C.P. art. 927(B) (failure to disclose a cause of action may be noticed by an appellate court on its own motion). An exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged. *Jackson v. City of New Orleans*, 12-2742, p. 24 (La. 1/28/14), 144 So.3d 876, 895. The parties timely submitted requested supplemental briefing on this issue.

The Louisiana Constitution authorizes local governmental subdivisions to adopt home rule charters. La. Const. art. VI, § 5(A). A home rule charter so adopted provides "the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs not denied by general law or inconsistent with [the Louisiana Constitution.]" La. Const. art. VI, § 5(E). A "political subdivision shall cause to be prepared a comprehensive budget presenting a complete financial plan

3

for each fiscal year for the general fund and each special revenue fund." La. R.S. 39:1305(A). "The total of proposed expenditures shall not exceed the total of estimated funds available for the ensuing fiscal year." La. R.S. 39:1305(E). Political subdivisions operating under a home rule charter may require more extensive financial planning and budgeting practices beyond the statutory minimums set forth in the Louisiana Local Government Budget Act ("LLGBA"). *See* La. R.S. 39:1303(A).

Shreveport Code of Ordinance § 7.02(e) specifies "[t]he adoption of the operating budget ordinances shall constitute an appropriation of the sums specified therein for the purposes and from the funds indicated." It necessarily precludes retroactive budgetary allocations as an "appropriation shall be considered valid only for the year for which made and any part of such appropriation which is not encumbered or expended shall lapse at the end of the year." *Id.* "No funds shall be expended, and no obligation incurred other than in accordance with the operating budget ordinances." Shreveport Code of Ordinance § 7.02(f). Thus, the ordinances are an additional requirement of financial planning imposed by the City to ensure budgetary expenditures do not exceed funds available for the ensuing fiscal year in accord with the LLGBA.[4] *See* La. R.S. 39:1303(A) and 39:1305(E).

Based on the express provisions of the Shreveport Code of Ordinances, we find there is no cause of action to recover alleged deficits in budgetary allocations

---

[4] As observed by one commentator:

> [O]ne can readily envision a situation in which the parish governing authority could be impaled on the horns of a statutory dilemma because:
>
> (a) a parish official whose office expenses are statutory charges of the parish governing authority seeks a mandamus to compel payment; but
>
> (b) an outraged taxpayer seeks an injunction pursuant to [La. R.S. 39:1315] to prohibit the parish governing authority from paying the parish official's requested office expenses because to do so would result in a deficit.

I. Jackson Burson, Jr., *Not Endowed by their Creator: State Mandated Expenses of Louisiana Parish Governing Bodies*, 50 LA. L. REV. 635, 653 (1990).

retroactively. The Marshal's recovery is therefore limited to any amounts owed for the 2020 fiscal year.

### STATUTORY PROVISIONS RELATING TO MARSHAL'S OPERATION

A marshal is the executive officer of city and municipal courts empowered with executing the orders and mandates of the court. La. R.S. 13:1881(A). A municipality is required to fund certain expenses of the marshal. *See, e.g.*, La. R.S. 13:2084 (city of Shreveport shall furnish and maintain an automobile for use of the marshal); La. R.S. 13:2085 (city of Shreveport shall pay the salary of the marshal and his deputies). A city "shall furnish a suitable city court room and suitable offices for the judge, clerk, and marshal." La. R.S. 13:1889(A). "The expenses of operation and maintenance of the court room and offices shall be borne by the city." La. R.S. 13:1889(B). The marshal is further provided a special account funded by revenues generated by additional costs assessed in city court criminal matters.[5] La. R.S. 13:1899(C). This account "shall be in the name of and under the control of the marshal … and shall be used to defray operational expenses of the office of [the] marshal … all as may be useful and necessary for the proper

---

[5] In relevant part, La. R.S. 13:1899(C) provides:

> In all criminal matters, when the office of the marshal has derived one hundred thousand dollars or more in revenues for the year 2004 from costs assessed pursuant to this Subsection, the city judge shall assess, in addition to the costs assessed in Subsection A of this Section, the sum of fifteen dollars as additional costs of court. In all criminal matters, when the office of the marshal has derived less than one hundred thousand dollars in revenues for the year 2004 from costs assessed pursuant to this Subsection, the city judge shall assess, in addition to the costs assessed in Subsection A of this Section, the sum of thirty dollars as additional costs of court. The proceeds shall be deposited in a special account, separate and distinct from the account provided for in Subsection B of this Section, which account shall be in the name of and under the control of the marshal or constable of the court, shall be subject to audit, and shall be used to defray operational expenses of the office of marshal or constable of the court, all as may be useful and necessary for the proper conduct of the marshal's or constable's office, or for purchase of law enforcement equipment, and all as may be proved by the marshal or constable.

Acts 2023, No. 121, §§ 1 and 2 recently amended La. R.S. 13:1899 with the amended versions going into effect January 1, 2024 and January 1, 2026, respectively. However, no alterations were made to the text of Subsection (C) or otherwise impact the interpretative result reached in this opinion.

5

conduct of [his] office … or for purchase of law enforcement equipment, and all as may be proved by the marshal." *Id*.

The City argues the language "shall be used to defray" in La. R.S. 13:1899(C) mandates that the Defrayment Funds be used to fund the operational expenses of the Marshal's office even if they are sourced from the Marshal himself. The Marshal counters that such an interpretation would take the Defrayment Funds out of his control and improperly use them to offset the City's obligation to fund the Marshal's operation and maintenance expenses. We disagree with the Marshal's interpretation.

The plain language of La. R.S. 13:1889 limits the City's funding obligation under that provision to the physical offices of the Marshal. *See* La. C.C. art. 9; La. R.S. 1:4; *Pierce Foundations, Inc. v. Jaroy Const., Inc.,* 15-0785, p. 7 (La. 5/3/16), 190 So.3d 298, 303 (starting point for the interpretation of a statute is the language of the statute itself). Sections 1889 and 1899 use different language and list different items to refer to the City's funding obligation as compared to the use of the Defrayment Funds. *See Myles v. Turner*, 612 So.2d 32, 34 (La. 1993) (use of differing language within statutory provisions related to the same subject matter suggest differing meanings). By their terms, La. R.S. 1889(A) and (B) require only that the City "shall furnish … suitable offices" and pay for the "expenses and maintenance of the … offices." Such language dictates the City need only fund costs associated with the physical structure and maintenance of the offices used by the Marshal.[6] In contrast, La. R.S. 1899(C) requires the Defrayment Funds "be

---

[6] In *Pineville City Court v. City of Pineville*, 22-0336, p. 6 n. 4 (La. 1/27/23), 355 So.3d 600, 605 n. 4, this Court observed in dicta that La. R.S. 13:1889 "deals with expenses attendant to the operation and maintenance of the courtroom and offices; i.e., the physical plant." We adopt this interpretation in resolving the matter at hand. We further note that any reliance on *McCain v. Grant Par. Police Jury*, 440 So.2d 1369 (La.App. 3d Cir. 1983), is inapposite as that case addressed the interpretation of La. R.S. 33:4713 – the language therein being markedly different in requiring parishes to provide "such offices, furniture, *and equipment* as may be needed by the clerks and recorders of the parish *for the proper conduct of their offices*." [Emphasis added].

used to defray operational expenses of the *office of marshal* or constable of the court, all as may be *useful and necessary for the proper conduct of the marshal's ... office*, or for purchase of law enforcement equipment." [Emphasis added.] Thus, the Defrayment Funds are the funding source for the "office of marshal" of the court to pay for costs which are "useful and necessary for the proper conduct" of his office. Whereas La. R.S. 13:1889(A) and (B) refer to the provision and maintenance of "suitable offices," La. R.S. 13:1899(C) refers to the "office of marshal" and costs for its actual conduct. The Defrayment Funds do not reduce the City's obligation to the Marshal because, under La. R.S. 13:1889, the City has no obligation to the Marshal other than the payment for his physical office and the maintenance of that office. This obligation has been met by services provided by the City through SPAR.

## DECREE

For the foregoing reasons, the lower courts are reversed and judgment is rendered in favor of the City dismissing the Marshal's petition for a writ of mandamus or, alternatively, damages with prejudice.


**REVERSED AND RENDERED**

# SUPREME COURT OF LOUISIANA

## No. 2023-C-00182

## CHARLIE CALDWELL JR., SHREVEPORT CITY MARSHAL AND THE SHREVEPORT CITY MARSHAL'S OFFICE

## VS.

## THE CITY OF SHREVEPORT

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Caddo

 **Hughes, J., dissents.**

Respectfully, I would grant the relief requested.

**CHARLIE CALDWELL JR., SHREVEPORT CITY MARSHAL AND THE
SHREVEPORT CITY MARSHAL'S OFFICE**

**VS.**

**THE CITY OF SHREVEPORT**

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Caddo

**CRICHTON, J., additionally concurs and assigns reasons:**

I agree with the majority's finding that a proper statutory interpretation of La. R.S. 13:1889 requires that the City is only obligated to fund payment for the Marshal's physical office and the maintenance of that office. I also write separately to underscore the importance of vacating the court of appeal's ruling, which amended the trial court's judgment to order that defendants fund the Marshal's expenses of operation and maintenance in the astonishing amount of $4,587,572.85 for the years 2010 through 2020. In my view, the court of appeal clearly erred in its conclusion.

It is well settled that the interpretation of any statutory provision starts with the language of the statute itself. *Boudreaux v. La. Department of Public Safety and Corrections,* 12-239, p. 4 (La. 10/16/12), 101 So. 3d 22, 26, citing *Oubre v. Louisiana Citizens Fair Plan,* 11–0097, p. 11 (La.12/16/11), 79 So.3d 987, 997. Furthermore, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art.9; *Benjamin v. Zeichner,* 12-1763, p. 6 (La. 4/5/13), 113 So. 3d 197, 202. Relevant to the Court's decision herein, La. R.S. 13:1889 provides:

> A. The **city where the court is situated shall furnish a suitable city court room and suitable offices for the judge, clerk, and marshal**.

1

It shall also furnish adequate fireproof vaults or other filing equipment for the preservation of the records of the court.

B. **The expenses of operation and maintenance of the court room and offices shall be borne by the city**, or may be apportioned between the city and parish as the respective governing authorities may determine.

C. Provided however, the expenses and maintenance of the courtroom and offices of the city court of Morgan City shall be borne by the governing authorities of the city of Morgan City and the parish of St. Mary in a proportion which the population of the city of Morgan City within Ward 6 of St. Mary Parish and which the population of the unincorporated portions of Ward 6 of St. Mary Parish bear to the total population of Ward 6 of St. Mary Parish as determined and adjusted from time to time by the decennial United States census.

(emphasis added).

The clear and unambiguous language in the statute provides that the "city . . . . shall furnish . . . . suitable offices for the . . . . marshal" and the "expenses and operation and maintenance" of those offices shall also be the responsibility of the City. Thus, the majority correctly concludes that the City's funding obligation under this provision is limited to the physical offices and operation and maintenance of the marshal's offices. Furthermore, the majority appropriately finds that in light of the City's clearly defined funding obligation outlined in La. R.S. 13:1889, the additional revenues generated by assessed costs as set forth in La. R.S. 13:1899(C) shall be used to "defray operational expenses of the office of marshal . . . ." and serve as a funding source "for the proper conduct of the marshal's . . . office." Accordingly, I agree that these funds do not form a part of the City's funding obligation, and instead, these "defrayment funds" are to be utilized to defray the Marshal's operational expenses.

I also write separately to note that following oral argument, as stated by the majority opinion, this Court requested supplemental briefs specifically addressing "the issue of whether a cause of action may properly exist to retroactively recover, beyond the fiscal year claimed to be inadequately funded, for budgetary allocations allegedly owed by the City of Shreveport." I agree with the majority's finding that

2

there is no cause of action to retroactively recover previous budgetary allocations (beyond the alleged inadequately funded year), and allowing any claim for amounts beyond a particular budget year is not only not feasible, it is disruptive to cohesive government function.

# SUPREME COURT OF LOUISIANA

## No. 2023-C-00182

## CHARLIE CALDWELL JR., SHREVEPORT CITY MARSHAL AND THE SHREVEPORT CITY MARSHAL'S OFFICE

## VS.

## THE CITY OF SHREVEPORT

On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Caddo

**CRAIN, J., concurs and assigns reasons.**

I write separately to emphasize there is no cause of action to recover non-appropriated or under appropriated funds prior to the current budget year.

Tax dollars that fund government are collected and disbursed only on an annual basis. Once a budget year closes and those dollars are appropriated and spent, there is no source from which to collect past amounts without crippling the operations of government going forward. Allowing retroactive recovery outside a current budget year is inimical to the functioning of government. That reality is why the Shreveport Charter recognizes that appropriations lapse at the end of a budget year. After that year, a cause of action cannot be sustained for prior amounts, and a new budget based on projected collections for the next budget year is prepared.

While litigation of a budget dispute can extend beyond the current budget year, once suit is initiated, recovery of funds for that budget year is viable until judicial disposition. A mandamus suit, which is a summary proceeding, puts the appropriating entity on notice that funds for that particular budget year are in dispute. Those funds can then be managed considering the possible outcomes of the suit. Without a legal objection to a year's budget allocation, no cause of action exists to recover any alleged budgetary deficit.